CONAGRA FROZEN FOODS, INC. *v.* DIRECTOR OF LABOR, and Jerry Honaker, J.M. Honaker, Jan Honaker and William Reaves

E 89-50                                    806 S.W.2d 27

Court of Appeals of Arkansas
Division I
Opinion delivered March 27, 1991

*Mobley, Smith and Mobley*, by: *William F. Smith*, for appellant.

*Allan Pruitt*, for appellee's.

MELVIN MAYFIELD, Judge. This is an appeal by ConAgra from a decision of the Arkansas Board of Review holding the appellee-claimants were entitled to unemployment compensation because they were, within the meaning of the Arkansas Employment Security Law, unemployed and not on vacation for the weeks ending June 25 and July 2, 1988.

At a consolidated hearing before the Appeal Tribunal, involving these claimants and 95 other similarly-situated claimants, the appellant's manager of human resources testified that every year since 1971, except for one, the appellant had designated a vacation period during the summer months to coincide with a shutdown of the plant's production. Appellant has the right to do this under its bargaining unit contract.' The manager of human resources also testified that it is impossible to schedule individual vacations so the contract provides for a two-week vacation period during the summer to be fixed by appellant. On December 31, 1987, the appellant posted on the employee bulletin board a notice designating the period of June 20, 1988, through July 3, 1988, as the vacation period for 1988. Monday, July 4, 1988, was a paid holiday, therefore, no one returned to work on that day and appellant reopened for production on July 5. Appellees, who worked on the "enchilada line," were scheduled to return to work on July 6 because, according to the appellant, they worked in a preparation area and no enchilada dinners were scheduled for production on July 5.

In a telephone hearing conducted for the Board of Review for the claimants in this case, Jerry Honaker testified on behalf of all these claimants that the cooks must come in and "get us ready" before "my time can start"; that the cooks reported in on July 5 at 11:30 p.m.; and that the claimants started at 5:00 a.m. the next morning. Honaker testified further that they normally work from Monday through Friday, but "a lot of times" they do not come in until Tuesday due to the product that is being run on the line.

The Employment Security Division denied benefits and the Appeal Tribunal affirmed finding that appellees were not unemployed but were on vacation during the period from June 20, 1988, through July 2, 1988. On appeal to the Board of Review, the decision was reversed and appellees were awarded benefits. The Board concluded:

> The evidence does not establish that the first day the claimant was scheduled to return to work after the vacation period was the first work day the claimant would normally have worked after the vacation period. A finding that a claimant was to return to work the first work day that normally would be worked by that claimant after the vacation period ended is necessary to establish that the claimant was on vacation during the vacation period.

In the first place, we do not believe the first sentence of the above conclusion is supported by substantial evidence. The Board's review of the evidence states as to each of the claimants in this case, "A written statement in the record attributable to the claimant on a Claimant's Statement Concerning Vacation form indicates that the claimant was scheduled to report back to work on July 6." The evidence is undisputed that no one worked on Monday, July 4, because it was a holiday. Due to the holiday and the preparation which had to be made by the cooks on July 5, the first day the claimants could have worked was July 6. We see nothing unusual or abnormal about the claimants' return-to-work date. And in the second place, the second sentence of the Board's conclusion, set out above, is not a correct statement of the law. Actually, it is the Board's view of the law, as disclosed by the second statement, that caused the Board to make its first statement. This is shown by the conclusions of the Board, which

immediately follow the conclusions set out above:

> The evidence indicates that such a return is controlled by the employer's production requirements. Therefore, to determine a normal return day, the first day after a weekend should be a significant indication of a normal return day after a vacation period. Otherwise, a normal return day would be subject only to a varying production schedule of the employer.

To understand the Board's conclusions, we need to look at the Arkansas Employment Security Law. Ark. Code Ann. § 11-10-214 (Supp. 1989) provides in pertinent part:

> (a) As used in this chapter, unless the context clearly requires otherwise, an individual shall be deemed "unemployed" with respect to any week during which:

> (1) He performs no services; and

> (2) No wages are payable to him with respect to that week . . . ; and

> (3) He is not on vacation. A "vacation" shall be defined as a period of temporary suspension of regular work, the period having been scheduled by, or with the consent of, the employer solely for reasons of vacation during which time the employee is either receiving vacation pay, has been paid, or will be paid vacation pay for the period at a later date or would be entitled to vacation pay for the period if he had sufficient seniority or hours of work and he is not on layoff. However, an individual who, for the sole purpose of phasing down production, is placed on a short-term layoff of three of his work days, or less, duration immediately preceding a vacation as defined in this subdivision and who is to return to work the first work day that normally would be worked by that employee after the vacation period ends shall be considered to be on vacation during the vacation period.

    Here there is evidence that appellant had designated the two-week period as the "designated vacation period" and that no production was scheduled for those two weeks. It is not contended that the claimants did not receive vacation pay for the

two-week period or that they did not receive holiday pay for July 4th. Nor is there any evidence that any of these claimants was placed on a "short-term layoff of three of his work days, or less, duration immediately preceding a vacation." The evidence shows that each of them fits squarely within the definition of being on "vacation" as that term is defined in the above statute. They were on "a period of temporary suspension of regular work, the period having been scheduled by, . . . the employer solely for reasons of vacation during which time the employee is . . . receiving vacation pay . . . and he is not on layoff."

The conclusions to the contrary reached by the Board of Review are explained by the brief filed for the appellee-claimants by the Director of Labor. In that brief it is argued that the Employment Security Law was amended by Act 753 of 1987 to add the last sentence as above quoted from Ark. Code Ann. § 11-10-214, *supra*. The purpose of that sentence, the appellees' brief states, was to add a "phase down" provision. The brief also states:

> It is the Appellees' contention that had the legislature intended for the Employment Security Law to provide for a phase up it would have stated so in the law.

So, it is clear that the Board agreed with the view taken in appellees' brief and simply decided that the legislature intended by its silence that employees who return from vacation must be returned to work immediately without any "phase up" time. To reach this result, however, it is necessary to read language into the law that is not there. It is also necessary to find that the claimants in this case would have gone to work on Monday, July 5, if the plant had not been shut down for the vacation period and that is not supported by substantial evidence. We understand the argument in the appellees' brief that to allow a "phase up" period after a plant has been shut down for a vacation period might conceivably leave workers out of work for several days; however, that is not the situation under the evidence in this case.

The decision of the Board of Review is reversed and this case is remanded with directions for the Board to deny the appellees' claims for unemployment compensation.

Reversed and remanded.

COOPER and DANIELSON, JJ., agree.