Rose TURNBOUGH *v.*
MAMMOTH SPRING SCHOOL DISTRICT No. 2

01-696 78 S.W.3d 89

Supreme Court of Arkansas
Opinion delivered June 20, 2002

*Larry Dean Kissee*, for appellant.

*Laser Law Firm, P.A.*, by: *Dan F. Bufford* and *Brian A. Brown*, for appellee.

*Kristen Craig Gould* and *W. Paul Blume*, for *amicus curiae* Arkansas School Boards Association.

D ONALD L. CORBIN, Justice. This case is before us on a petition for review from a decision by the Arkansas Court of Appeals in *Turnbough v. Mammoth Spring Sch.*, 74 Ark. App. 107, 45 S.W.3d 430 (2001). For reversal, Appellant Rose Turnbough argues that the trial court erred in determining that Appellee Mammoth Spring School District No. 2 was not required to pay her for accumulated sick leave when she resigned her teaching position. This issue is one of first impression, properly decided by this court; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and 2-4(c)(iii). We find no error and affirm.

Turnbough was employed as a school teacher with the school district from August 1, 1979, until the end of the school year in 1999. At that time, Turnbough notified the school district that she would not be renewing her contract. She also requested that the school district pay her for ninety days of sick leave that she had accumulated. The school district refused on the basis that Turnbough did not meet either of the two criteria for such payment as established in the district's policies, which were subsequently incorporated into Turnbough's teaching contract.

Thereafter, Turnbough filed a declaratory-judgment action in the Fulton County Circuit Court, seeking a declaration that she was entitled to payment for the sick leave under the Arkansas Teachers' Minimum Sick Leave Law, codified at Ark. Code Ann. §§ 6-17-1201—1209 (Repl. 1999). A hearing was held on this matter on June 20, 2000. At that time, Turnbough testified that

after leaving her job with the school district, she took a counselor's position with the West Plains High School in West Plains, Missouri. Turnbough also stated that she filed for teacher retirement before taking the counselor position in Missouri, but was told that she was not eligible for retirement benefits at that time. On cross-examination, Turnbough also admitted that she read the school district's sick-leave policy as set forth in her teaching contract.

Also testifying at this hearing was Houston Case, the school district's superintendent. He testified that under the employment contract signed by Turnbough, payment for unused sick leave only occurred where an employee accumulates more than ninety days of sick leave or where an employee is eligible and files for retirement benefits. Case stated that because neither of these situations applied to Turnbough, there was no provision to pay her for her unused sick leave.

Finally, Wilma Rogers testified that she was an administrative bookkeeper with the school district. According to Rogers, she was unaware of any teacher ever being paid for unused sick leave that did not fall within one of the two provisions set forth in the school district's sick-leave policy. After considering this testimony, the circuit court determined that Turnbough was not entitled to payment for the unused sick leave under the terms of the Sick Leave Law or her teaching contract. The trial court then entered an order dismissing Turnbough's complaint with prejudice.

On appeal, the court of appeals affirmed the trial court's order dismissing Turnbough's complaint. In so ruling, the court of appeals agreed that a plain reading of the statute revealed that while school districts are free to decide whether to compensate teachers for unused sick leave, they are not required to do so. The only requirement set forth in the Sick Leave Law regarding payment for unused sick leave is that any such payments must come from the school district's salary funds. In the same vein, the court of appeals determined that Turnbough was not entitled to payment for the unused sick leave under the terms of her contract

with the school district. Turnbough then petitioned this court for review of the court of appeals' decision.

After granting Turnbough's petition for review, this court also granted a motion allowing the Arkansas School Boards Association to file an *amicus curiae* brief in this matter. Therein, the Association argues that the General Assembly has been aware of this school district's, as well as numerous other school districts', policies regarding payment of unused sick leave and has not stepped in to require a modification of those policies. The Association also argues that under Turnbough's interpretation of the Sick Leave Law, school districts could be left financially devastated by a sudden onslaught of requests for cash payments by teachers who have accumulated sick leave. Finally, the Association argues that Turnbough's interpretation of the Sick Leave Law is contrary to public policy. Specifically, the Association avers that the purpose of the law is to create a buffer against economic hardship for teachers who fall ill or have family that become ill. Allowing teachers to request payment for that sick leave would then defeat the intent of the General Assembly when they passed the Sick Leave Law.

■ On appeal, Turnbough argues that the trial court erred in ruling that she was not entitled to payment for the unused sick leave under the terms of the Sick Leave Law. She also argues that the school district's sick-leave policy is more restrictive than allowed by the statute and that the policy also violates the Privileges and Immunities Clause of the United States Constitution. The school district counters that the intent of the Sick Leave Law is not to provide cash payments for unused sick leave, but rather to provide teachers with a mechanism for accumulating sick leave as a buffer against financial hardship in the event of future illness or injury. Thus, the school district argues that the trial court's declaration that Turnbough was not entitled to a cash payment was correct. As to Turnbough's remaining two arguments, the school district contends that these arguments were not raised below, and thus, are not preserved for appellate review. We agree that the latter two arguments were not raised below, and thus, will not now be reviewed by this court. It is well settled that with the notable exception of matters involving subject-matter jurisdiction,

we will not consider issues raised for the first time on appeal, even where the issue is a matter of constitutional magnitude. *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001); *Burke v. Strange*, 335 Ark. 328, 983 S.W.2d 389 (1998); *Furman v. Holloway*, 312 Ark. 378, 849 S.W.2d 520 (1993).

■■■■ Turning now to the issue of the applicability of the statutes, we begin by reiterating our well-established principles regarding statutory construction. We review issues of statutory construction *de novo*, as it is for this court to decide what a statute means; thus, we are not bound by the trial court's determination. *Bourne v. Board of Trustees of the Policeman's Relief Pension Fund*, 347 Ark. 19, 59 S.W.3d 432 (2001); *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Bond v. Lavaca Sch. Dist.*, 347 Ark. 300, 64 S.W.3d 249 (2001); *Ozark Gas Pipeline v. Arkansas Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Stephens*, 341 Ark. 939, 20 S.W.3d 397. This court construes the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Burford Distrib., Inc. v. Starr*, 341 Ark. 914, 20 S.W.3d 363 (2000).

We now apply these principles to the provisions at hand. Section 6-17-1204 provides:

> (a) Each school district in the state shall provide sick leave for each of its teachers at a minimum rate of one (1) day per month or major portion thereof that the teacher is contracted, at full pay.

> (b) Such leave shall be in force beginning with the first day of the first school term for which each teacher is employed.

(c) If a teacher resigns or leaves his teaching position for any reason before the end of the school term, the employing district may deduct from his last paycheck full compensation for any days of sick leave used in excess of the number of days earned.

(d) A teacher shall be entitled to sick leave only for reasons of personal illness or illness in his immediate family.

Under the terms of section 6-17-1208, school districts are free to provide more liberal sick-leave benefits to their employees:

The number of days of sick leave provided by this subchapter are minimums only, and nothing in this subchapter shall prohibit any school district from providing more days of sick leave or from having a more liberal policy for the administration of sick leave, including, but not limited to, the establishment of sick leave pools or banks and allowing district employees who are husband and wife to each utilize the other's accumulated sick leave.

Critical to the present issue is the language found in section 6-17-1207. That section states that "[p]ayment for unused sick leave shall be made from the salary fund of the district, and these moneys shall be included in meeting the annual requirements for payment of teachers' salaries."

Turnbough had been employed with the school district for nearly twenty years. She admitted that she signed an employment contract with the school district and was aware of the district's sick-leave policy that was incorporated into the terms of her contract. That policy provided as follows:

*Policy Name: ILLNESS OR SICK LEAVE* *Policy Code: GBRIB*
 *Date Adopted: MAY 18, 1994*

All full time personnel of the Mammoth Spring School District will be provided with one (1) day of sick leave for each month they are under contract. The sick leave that is not used by an employee may be accumulated up to a total of ninety (90) days. If an employee is absent only in the morning or afternoon, he will have used only one-half day sick leave. Sick leave days may be used only for the reasons of personal illness of the immediate family. Sick leave may also be used in case of a death in the immediate family. In case of doubt, the administration may require a doctor's statement to verify illness. Immediate family is

defined as spouse, child, parent, grandparent, brother, sister, uncle or aunt, either by blood or marriage.

An employee who is absent from school except for these reasons outlined in Act 818 of 1989 will have deducted from his salary one day's salary for each day absent.

When a certified person employed by another School District in this state shall accept employment in this School District, he/she shall be granted credit for any unused sick leave accumulated in the former School District, not to exceed a maximum of 90 days. Said accumulated and unused sick leave credit shall be granted to teacher upon furnishing proof in writing thereof from the School District of former employment of the teacher.

PAY FOR UNUSED SICK LEAVE

Certified personnel will be paid for unused sick leave in excess of ninety (90) days at the rate of a substitute teacher pay.

Any certified employee who is eligible and files for Arkansas Teacher Retirement will be paid at the current rate paid for substitute teachers, for any unused sick leave, not to exceed 90 days.

*Legal References:*
Act 818 of 1989

Thus, under the terms of Turnbough's contract with the school district, an employee is paid for unused sick leave only in two circumstances. First, if a teacher accrues more than ninety days of sick leave, then the school district is required to pay for those excess days at the rate of a substitute teacher pay. Second, any teacher who retires and is eligible for Arkansas Teacher Retirement will be paid for unused sick leave, not to exceed ninety days, at the current rate paid for substitute teachers. Turnbough concedes that she falls into neither of these categories.

 Turnbough argues that in 1979 the General Assembly through passage of Act 1016 of 1979 repealed the prohibition against payments for unused sick leave, previously codified at Ark. Stat. Ann. § 80-1253 (Supp. 1979). It is correct that school districts are no longer prohibited from paying teachers for unused sick leave, but we disagree with Turnbough's assertion that such payment is now mandatory. The new provision, codified at sec-

tion 6-17-207, simply requires that when a school district does pay a teacher for unused sick leave that it does so from the district's salary fund. Mandating the source of such payment is not the equivalent of mandating those payments. We will not interpret the statute in a meaning that is contrary to the clear language of the statute; nor will we read into the statute language that is not there. *See, e.g., State v. Goss*, 344 Ark. 523, 42 S.W.3d 440 (2001); *Conagra Frozen Foods, Inc. v. Director of Labor*, 34 Ark. App. 108, 806 S.W.2d 27 (1991).

█ Moreover, it was uncontroverted that Turnbough had accumulated exactly ninety days of unused sick leave, thus not entitling her to payment for excess hours. Turnbough admitted that she had filed for Arkansas Teacher Retirement but had been denied benefits because she was ineligible for retirement at that time. In sum, nothing in Turnbough's teaching contract would lead her to believe that she was owed payment for the ninety days of sick leave that she had accumulated. Neither the Sick Leave Law, nor Turnbough's contract entitled her to such payment.

We are likewise unpersuaded by Turnbough's attempt to argue that she has a vested contractual right to the accumulated sick leave that somehow translates into a requirement that the school district pay her for those days. In advancing this argument, Turnbough relies on this court's decision in *City of North Little Rock v. Vogelgesang*, 273 Ark. 390, 619 S.W.2d 652 (1981). Turnbough, however, ignores the following language in *Vogelgesang*, where we rejected a similar argument:

> The appellees argue that they had a vested contractual right to their accumulated sick leave because they "contributed" to the plan, not in money but by coming to work when they might have stayed away and charged their absence to sick leave. We do not find this argument persuasive. The ordinary meaning of the words "sick leave" contemplates an illness rather than an optional holiday with full pay.

*Id.* at 392, 619 S.W.2d at 653.

■ . Here, it is evident that the General Assembly wanted to provide economic protection for teachers facing time off work due to illness. There is no indication that the legislature intended to provide teachers with a secondary source of income. We are further persuaded that our interpretation of the Sick Leave Law is correct by a review of the Emergency Clause that precedes the provisions of this law. It provides in relevant part:

> It is hereby found and determined by the General Assembly that a number of schoolteachers who move from the district where they were formerly employed and accept employment in another school district often lose credit for accumulated sick leave in the school district of former employment, which imposes undue hardship upon the teacher in the new school district, and that it is essential to the efficient operation of the public schools in this State that public schoolteachers employed in this State shall not lose credit for accumulated sick leave when said teachers move or transfer to another school district, and that the immediate passage of this Act is necessary to correct this situation.

Thus, the legislature has not hesitated to intervene and correct a situation where school districts' policies conflicted with the purpose of the Sick Leave Law. No similar emergency has been declared due to school districts' failure to pay teachers for unused sick leave. In the absence of any such legislative intent, we cannot say the trial court's decision to dismiss Turnbough's complaint was erroneous.

Affirmed.

GLAZE, J., not participating.