HARTFORD FIRE INSURANCE COMPANY; Advocat, Inc.; Diversicare Leasing Corporation; Diversicare Management Services Co.; and Rich Mtn. Nursing & Rehab Center *v.* Lon C. SAUER, as Administrator of the Estate of Margaretha Sauer

04–127                                      186 S.W.3d 229

Supreme Court of Arkansas
Opinion delivered June 17, 2004

*Blair & Stroud*, by: *H. David Blair*, for appellant Hartford Fire Ins. Co.

*Williams & Anderson PLC*, by: *Philip S. Anderson, Jess Askew III*, and *Kelly S. Terry*, for appellants Advocat, Inc.; Diversicare Leasing Corp.; and Diversicare Management Services Co.

*Quattlebaum, Grooms, Tull & Burrow, PLLC*, by: *Leon Holmes* and *E.B. Chiles IV; Wilkes & McHugh, P.A.*, by: *Brian D. Reddick* and *Susan Nichols*; and *Page, Thrailkill & McDaniel*, by: *Daniel B. Thrailkill* and *Patrick C. McDaniel*, for appellee.

ROBERT L. BROWN, Justice. Appellants, Hartford Insurance Company and Advocat, Inc., appeal from the circuit court's final judgment awarding the appellee, Lon C. Sauer, as Administrator of the Estate of Margaretha Sauer (the Estate), the sum of $26,400,000 plus ten percent interest per annum from June 29, 2001, and $25,000 plus six percent interest from the same date. The sole point on appeal is that the circuit court erred in awarding ten percent postjudgment interest on the $26.4 million tort judgment as that interest rate is in excess of the maximum rate of interest permitted under the Arkansas Constitution. We agree with the appellants, and we reverse the case and remand for an order consistent with this opinion.

In *Advocat, Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346 (2003) (*Advocat I*), this court affirmed a nursing-home negligence jury verdict in the Estate's favor on condition of remitittur. Following

the denial of *certiorari* by the United States Supreme Court, *see Advocat, Inc. v. Sauer*, 124 S. Ct. 532 (2003), and *Sauer v. Advocat, Inc.* 124 S. Ct. 535 (2003), the Estate moved the circuit court for execution on the posted supersedeas bonds. The motion asserted that the statutory rate of interest on judgments is ten percent under Ark. Code Ann. § 16-65-114(a) (1987). The original judgment in the trial court had provided that postjudgment interest would accrue "from the date of entry until satisfied as provided by Ark. Code Ann. § 16-6[5]-114(a)."[1] The motion requested the circuit court to "enter judgment against the sureties and execution on the supersedeas bonds posted in this case in the amount of $26,425,000 plus interest at the rate of 10 percent per annum since the date of the entry of the judgment by this Court, which amount is $32,752,520.55 as of November 20, 2003," to increase "in the amount of $7,239.73 per day thereafter."

Advocat responded to the Estate's motion and contended that the Estate had miscalculated the rate of interest to be imposed on the remitted judgment. It asserted that Article 19, § 13, of the Arkansas Constitution prohibits interest in excess of "five percent per annum above the Federal Reserve Discount Rate at the time of the contract" and that § 16-65-114(a) limits postjudgment interest by Article 19, § 13.[2] It further claimed that on June 29, 2001, the date of the judgment against it and appealed from in *Advocat I*, the applicable federal interest rate under the Arkansas Constitution was 3.25 percent. With the added five percent, Advocat maintained that the proper rate of interest under § 16-65-114(a) should have been 8.25 percent. It concluded that because an interest rate of ten percent on the judgment would exceed the amount permitted by the constitution, § 16-65-114(a) required an interest rate of 8.25 percent on the Advocat judgment.

Following a hearing on the matter, the circuit court concluded that the judgment rate of interest should be ten percent. An order reflecting the court's ruling was entered and read that the Estate was entitled to "$26,400,000.00, plus 10% interest per annum from June 29, 2001, which has been calculated at $7,232.88

---

[1] The judgment actually referred to § 16-64-114(a), but it is clear to this court that the circuit court was referring to § 16-65-114(a).

[2] While it does not affect this appeal, Advocat points out that due to changes made to the Federal Reserve Board's Regulation A in 2003, there is no longer a federal reserve discount rate.

per day and $25,000.00 plus 6% interest per annum from June 29, 2001, which has been calculated at $4.11 per day[.]"

The statute in question, § 16-65-114(a), reads as follows:

> (a) Interest on any judgment entered by any court or magistrate on any contract shall bear interest at the rate provided by the contract or ten percent (10%) per annum, whatever is greater, and on any other judgment at ten percent (10%) per annum, but not more than the maximum rate permitted by the Arkansas Constitution, Article 19, § 13, as amended.

Ark. Code Ann. § 16-65-114(a) (1987). Again, the question before us is whether the reference to Article 19, § 13, limits postjudgment interest in all cases. Advocat contends on appeal that the circuit court's award of ten percent postjudgment interest is contrary to the plain language of § 16-65-114(a). It claims that rather than proceeding under the statute, the circuit court relied on a 1995 decision of this court, which Advocat believes this court has since repudiated. Advocat specifically states that it does *not* challenge the interest rate applied by the circuit court to contract damages. Instead, it contends that the only question is the rate of interest the statute sets for "any other judgment," which in this case is the $26.4 million judgment for tort damages. It asserts that the plain language of § 16-65-114(a) directs a court that is determining the rate of interest on a tort judgment to consider the maximum lawful interest rate set forth in Article 19, § 13, of the Arkansas Constitution as a cap on the rate of postjudgment interest. Advocat urges that because the maximum lawful interest rate was 8.25 percent, the circuit court erred in refusing to apply that rate and in setting the postjudgment interest at ten percent.

Hartford Fire Insurance claims that the limiting provision of § 16-65-114(a), "but not more than the maximum rate permitted by the Arkansas Constitution, Article 19, § 13, as amended[,]" refers to both preceding phrases of the statute — the phrase relating to postjudgment interest on contracts and the phrase relating to "any other judgment." It points to the fact that Act 782 of 1985 added the "but not more than" provision to the then-existing statute, which pertained to postjudgment interest on any other judgment, Ark. Stat. Ann. § 29-124 (Repl. 1979), rather than the separate statute pertaining to postjudgment interest on contracts, Ark. Stat. Ann. § 29-125 (Repl. 1979). It argues that by Act 782, the General Assembly extended the State's public policy of limit-

ing interest rates to interest on judgments by limiting the rate of interest on any judgment to the floating ceiling provided for by the constitution.

The Estate responds that the issue in this case is whether this court should overrule *Carroll Elec. Coop. Corp. v. Carlton*, 319 Ark. 555, 892 S.W.2d 496 (1995), which dealt with § 16-65-114(a) and a tort judgment. The Estate asserts that in that case, this court held that Article 19, § 13, does not apply to interest on tort judgments, and that any interpretation of the statute by this court becomes a part of the statute itself. The Estate adds that in that decision, this court construed the statute to provide for ten percent interest per annum on all tort judgments and that any request to change that construction of the statute should be addressed to the General Assembly, not this court. The Estate further contends that the "but not more than" clause in the statute pertains only to judgments on contracts, not tort judgments. It also submits that this court's opinion of *Bank of America, N.A. v. C.D. Smith Motor Co., Inc.*, 353 Ark. 228, 106 S.W.3d 425 (2003), did not overrule *Carroll Elec. Coop. Corp. v. Carlton, supra,* as *Bank of America* involved breach of contract. Thus, there was no issue presented to this court in the *Bank of America* case on the rate of interest on a tort judgment. The Estate concludes that this case is resolved by the rule that a construction of a statute by this court becomes a part of the statute. Otherwise, the Estate contends, different caps would exist for postjudgment interest in contract judgments and in all other cases.

A determination of the applicable postjudgment interest rate under § 16-65-114(a) is a question of law. While a trial court's findings of fact shall not be set aside unless clearly erroneous, a trial court's conclusions of law are not given the same deference. *See Phillips v. Town of Oak Grove*, 333 Ark. 183, 968 S.W.2d 600 (1998). Accordingly, we invoke our canons of construction for statutory interpretation. This court has established certain principles:

> ... We review issues of statutory construction *de novo*, as it is for this court to decide what a statute means; thus, we are not bound by the trial court's determination. *Bourne v. Board of Trustees of Little Rock Policeman's Relief Pension Fund*, 347 Ark. 19, 59 S.W.3d 432 (2001); *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Bond v. Lavaca Sch. Dist.*, 347 Ark. 300, 64 S.W.3d 249 (2001); *Ozark Gas Pipeline v. Arkansas*

*Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Stephens*, 341 Ark. 939, 20 S.W.3d 397. This court construes the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Buford Distrib., Inc. v. Starr*, 341 Ark. 914, 20 S.W.3d 363 (2000).

*Turnbough v. Mammoth Spring Sch. Dist. No. 2*, 349 Ark. 341, 346, 78 S.W.3d 89, 92 (2002).

In *Carroll Elec. Coop. Corp. v. Carlton, supra*, this court examined the appellees' claim that the trial court erroneously amended the award of postjudgment interest from ten percent to eight percent per annum in a tort case. The court analyzed the appellees' claim as follows:

> Article 19, section 13, of the Constitution does not apply to interest on judgments. *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991). Interest should have been provided at the statutory rate. We therefore reverse only that portion of the judgment providing for 8% interest per annum on the judgment, and we modify it to provide that interest on the judgment shall be 10% per annum.

319 Ark. at 565, 892 S.W.2d at 501. A similar statement was made by this court in *Gavin v. Gavin*, 319 Ark. 270, 890 S.W.2d 592 (1995).

In *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991), this court said that "Art. 19[, § 13,] voids only the payment of interest under the usurious contract and has nothing to do with the interest due on the judgment amount." 306 Ark. at 15, 810 S.W.2d at 939. Our postjudgment interest statute, § 16-65-114(a), was not mentioned in that case. However, in *McElroy*, a usurious loan was at issue, and McElroy claimed that Article 19, § 13, barred postjudgment interest on the penalty assessed against him. While the court's statement in *McElroy* is true on the surface, the opinion fails to consider the applicability of § 16-65-114(a), which governs postjudgment interest and expressly refers to Article 19, § 13.

We conclude that this court erred in *Carroll Elec. Coop. Corp. v. Carlton, supra.* Section 16-65-114(a) clearly addresses awards of postjudgment interest as to both judgments on contracts and "any other judgment." In fact, this court recently observed that the language from *McElroy* relied upon in *Carroll Elec.* was *obiter dicta.* See *Bank of America, N.A. v. C.D. Smith Motor Co., Inc., supra.* Although the appellants claim that the *Bank of America* case effectively overruled *Carroll Elec.,* a review of this court's opinion reveals that the appellants are mistaken. What this court did in *Bank of America* was to distinguish it from *Carroll Elec.* We said: "However, *Carroll Electric Cooperative* was a tort case and did not involve a judgment on a contract . . . ." 353 Ark. at 249, 106 S.W.3d at 437.

Prior to the enactment of Act 782 of 1985, the General Assembly maintained separate statutes with respect to postjudgment interest on contracts and on any other judgment. Because the judgment at issue in the instant case is one of tort, it would fall within the category of "any other judgment." Arkansas Statutes Annotated § 29-124 (Repl. 1979) dealt with interest on judgments, while Arkansas Statutes Annotated § 29-125 (Repl. 1979) dealt with interest on judgments on contracts.[3] Pertinent to the court's review in this case, is Ark. Stat. Ann. § 29-124 entitled *Interest on judgment,* which provided:

> Creditors shall be allowed to receive interest at the rate of ten per cent [10%] per annum on any judgment before any court or magistrate authorized to enter up the same from the day of signing judgment until the effects are sold or satisfaction be made; provided, however, that the court or magistrate entering a judgment may, in his discretion, reduce the interest rate, but in no event shall the rate be less than six per cent [6%] per annum; provided, also, no judgment rendered or to be rendered against any court in the State

---

[3] While not relevant to this appeal, § 29-125 provided:

Judgments or decrees upon contracts bearing more than six [6] per cent interest shall bear the same interest as may be specified in such contracts and the rate of interest shall be expressed in such judgments and decrees and all other judgments and decrees shall bear interest at the rate of six [6] per cent per annum until satisfaction is made; provided, no judgment rendered or to be rendered against any county in the State on county warrants or other evidences of county indebtedness shall bear any interest after the passage of this act.

Ark. Stat. Ann. § 29-125 (Repl. 1979).

on county warrants or other evidence of county indebtedness shall bear any interest after the passage of this Act [this section and § 68-604].

Ark. Stat. Ann. § 29-124 (Repl. 1979).

■ ■ In 1985, the General Assembly saw fit to amend § 29-124. Act 782 of 1985, as the appellants point out, modified the postjudgment interest statutes and merged Ark. Stat. Ann. §§ 29-124 and 29-125. The Act specifically included reference to Article 19, § 13, as already set forth in this opinion. In addition to the plain language of the Act, the emergency clause is instructive. This court has held that it is a rule of statutory construction that the emergency clause of an act can be used in determining the intent of the legislature. *See, e.g., Farm Bureau Mut. Ins. Co. v. Wright*, 285 Ark. 228, 686 S.W.2d 778 (1985). Act 782's emergency clause read:

> SECTION 3. EMERGENCY. It is hereby found and determined by the General Assembly that the rate of interest *on judgments* should be assessed in accordance with the amendment to Article XIX, Section 13 of the Constitution of Arkansas which became effective December 2, 1982. Therefore, an emergency is hereby declared to exist and this Act being necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.

Act 782 of 1985, § 3 (emphasis added). Irrespective of this court's observation in *Carroll Elec.* and notwithstanding the fact that Article 19, § 13, makes no reference to postjudgment interest, it is clear from a review of § 16-65-114(a)'s history, the plain language of the statute, and the emergency clause of Act 782 of 1985 that the General Assembly intended to limit the amount of interest awarded in all judgments by the rate set forth in the constitution.

■ While the Estate is correct that this court has previously held that as time passes, the interpretation given a statute becomes part of the statute itself, *see, e.g., Estate of Hull v. Union Pacific R.R. Co.*, 355 Ark. 547, 141 S.W.3d 356 (2004), that rule of statutory construction is not absolute and this court has also held that it will not interpret a statute to yield an absurd result that is contrary to legislative intent. *See City of Maumelle v. Jeffrey Sand Co.*, 353 Ark. 686, 120 S.W.3d 55 (2003). The General Assembly's

intent was made quite clear by the emergency clause in Act 782 of 1985 — the Act applies to all judgments. Thus, the statutory interpretation in *Carroll Elec.* yielded an absurd result which was clearly contrary to legislative intent in that the *Carroll Elec.* holding resulted in no statutory postjudgment interest rate for judgments other than contract judgments. To continue to rely on that opinion's analysis in interpreting the statute would continue to yield an untenable result. *See, e.g., Nelson v. Timberline Int'l, Inc.,* 332 Ark. 165, 964 S.W.2d 357 (1998) (holding that while *stare decisis* is a guiding principle, prior interpretations of worker's compensation statute must be overruled because the interpretations were wrong).

Because the circuit court found that the rate of interest under Article 19, § 13, for the instant judgment was 8.25 percent, on June 29, 2001, and the Estate does not challenge this finding, we reverse and remand the matter with instructions to modify the postjudgment interest rate on the tort award to 8.25 percent. We overrule *Carroll Elec. Coop. Corp v. Carlton, supra,* and *Gavin v. Gavin, supra,* to the extent they conflict with our holding regarding postjudgment interest and § 16-65-114(a).

Reversed and remanded.