David COCKRELL *v.* UNION PLANTERS BANK;
and Robert T. Wood and Jennifer Wood

03-1363                                                          194 S.W.3d 178

Supreme Court of Arkansas
Opinion delivered September 30, 2004

*Evans & Evans Law Firm*, by: *James E. Evans, Jr.*, for appellant.

*Mickel Law Firm, P.A.*, by: *Delbert Mickel*, for appellees.

Robert L. Brown, Justice. Appellant David Cockrell appeals from an order, which dismissed his petition to set aside a statutory foreclosure sale of property. Cockrell contends on

appeal that the circuit court erred in interpreting and construing Ark. Code Ann. §§ 18-50-116(c) and (d)(2) (Repl. 2003), when it ruled that claims and defenses under the statutory foreclosure act must be raised prior to the statutory foreclosure sale or be forever barred. He specifically contends that the statutory foreclosure act cannot be applied to a deed of trust or mortgage, which encumbers property primarily used for agricultural purposes. We affirm the dismissal.

On April 14, 1993, Cockrell was deeded the land in question, which exceeds forty acres and is located in Pea Ridge. On January 21, 2000, Cockrell obtained a residential loan from Union Planters Bank (Union Planters) for $39,600 to construct a log cabin on the land. Cockrell secured the loan by a deed of trust on the property. Cockrell failed to make timely payments on the loan, and on March 5, 2001, Union Planters's substituted trustee informed Cockrell that it intended to accelerate the note for foreclosure. Cockrell paid $4,720.75 for the delinquency amount and to reinstate the loan.

After Cockrell fell behind on his loan payments a second time, Union Planters filed a foreclosure action against him on October 26, 2001. Also on that date, notice was posted at the Benton County Courthouse that Cockrell's property would be sold at auction on December 27, 2001. The sale date was subsequently changed to January 16, 2002.

Appellees Robert and Jennifer Wood (Woods) subsequently purchased the property in question at the auction for $65,000. On January 22, 2002, the trustee's deed granting the property to the Woods was recorded, and the difference between what Cockrell owed to Union Planters and what the Woods paid at the sale, $19,377.77, was mailed to Cockrell by certified mail-return receipt requested. It was later returned to Union Planters marked "unclaimed."

On February 12, 2002, Cockrell filed a petition to set aside the foreclosure sale of the land and obtained from the circuit court a temporary restraining order to exclude the Woods from the property. Also on that day, Cockrell reentered the property and locked the property gate. On February 13, 2002, the Woods gave notice to Cockrell to quit and vacate the premises. On February 27, 2002, the Woods filed a counterclaim in the matter against Cockrell and claimed that they have a valid trustee's deed to the property. They asserted claims of unlawful detainer, forcible entry and detainer, and ejectment based upon Cockrell's refusal to vacate

the premises. On March 6, 2002, the Woods filed an amended counterclaim stating that they were *bona fide* purchasers in good faith and that they had been specifically damaged by Cockrell's actions.

On March 22, 2002, Cockrell filed an amended petition to set aside the foreclosure sale in which he specifically claimed that the non-judicial statutory foreclosure proceedings found in Ark. Code Ann. § 18-50-101 through § 18-50-117 (Repl. 2003), were not the proper procedures for foreclosure on this property and that the sale was void from its inception.[1] On April 2, 2002, the circuit court conducted a hearing at which the parties stipulated to the fact that the procedures followed by Union Planters in the foreclosure were proper. On May 9, 2002, the circuit court entered an order memorializing its findings and conclusions at the April 2, 2002 hearing. In that order, the court found the foreclosure procedures were proper. The court also concluded in its order that Cockrell's petition and amended petition were moot based on his stipulation. It ordered the temporary restraining order set aside and allowed the Woods to reenter the property. The court further ordered Union Planters to deposit the $19,377.77 check into the registry of the court. In its order, the court alluded to the fact that Cockrell wished to file a second amended petition to determine whether the foreclosed property was used primarily for agricultural purposes.

On April 10, 2002, Cockrell filed a second amended petition to set aside the foreclosure sale under Ark. Code Ann. § 18-50-116(c) and claimed that the land was primarily used for agricultural purposes and, as a result, the non-judicial statutory foreclosure procedure could not be pursued.

On April 23, 2003, the Woods moved to dismiss Cockrell's petition on grounds that Cockrell had admitted in court on April 2, 2002, that Union Planters correctly followed the procedures required regarding non-judicial statutory foreclosures and public sales of real property and because the court lifted the temporary restraining order against the Woods. The Woods also urged that Cockrell's second amended petition should be dismissed under Ark. R. Civ. P. 12(b)(6), because Cockrell failed to claim that the

---

[1] In his amended petition, Cockrell asserted that the non-judicial statutory foreclosure proceedings in § 18-50-601 were not the proper method of foreclosure. As there is no § 18-50-601, this court assumes Cockrell intended to cite §§ 18-50-101 — 18-50-117 (Repl. 2003).

subject property was used primarily for agricultural purposes prior to the foreclosure sale, as required by § 18-50-116(d)(2)(B).

On August 15, 2002, the circuit court held another hearing at which Union Planters and the Woods jointly argued a motion to dismiss the petition to set aside based upon § 18-50-116(d)(2)(B). The court agreed with the Woods and ruled that Cockrell had not raised the issue of the agricultural-purposes exception prior to the sale of the property under this section, and, thus, was barred from invoking that defense. On August 28, 2002, the court entered its order that dismissed Cockrell's second amended petition and further ordered that the $19,377.77 remain in the court's registry.

Cockrell appealed to the court of appeals, and on June 11, 2003, the court of appeals issued a *per curiam* opinion that dismissed Cockrell's appeal for lack of a final order. *See Cockrell v. Union Planters Bank*, CA02-1363 (Ark. App. June 11, 2003) (*per curiam*). A second order was then entered by the circuit court on September 10, 2003, with a Rule 54(b) certification. A second appeal was assumed by this court due to its being a case of first impression involving an alleged conflict in our state statutes.

Cockrell argues on appeal that the plain language of § 18-50-116(c) mandates that a statutory foreclosure proceeding performed on land primarily used for agricultural purposes is void. He further argues that the plain language of § 18-50-116(d)(2)(B), which bars defenses not raised before the foreclosure sale, means that the statutory foreclosure act does not impair the right of anyone to assert legal and equitable rights in a court of competent jurisdiction so long as "such rights" were asserted before the sale took place. Cockrell asserts that the "rights" contemplated by the General Assembly under § 18-50-116(d) included the right of redemption, equitable redemption, homestead, or any other equitable right rather than the "agricultural purposes" exception specifically provided in § 18-50-116(c). Cockrell states that § 18-50-116(d)(2)(B) is directed at finalizing foreclosure actions and restricting redemption attempts. He adds that Union Planters is not precluded from conducting another sale of the property using a judicial foreclosure proceeding, as specifically noted in Ark. Code Ann. § 18-50-116(a) (Repl. 2003).

In reviewing a circuit court's dismissal under Ark. R. Civ. P. 12(b)(6), this court must treat the facts alleged in the complaint as true and view them in a light most favorable to the plaintiff. *See Davenport v. Lee*, 348 Ark. 148, 72 S.W.3d 85 (2002).

In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *See id.*

This court reviews issues of statutory construction *de novo*, as it is for this court to decide what a statute means; thus, we are not bound by the circuit court's determination in that regard. *See Hartford Fire Ins. Co. v. Sauer*, 358 Ark. 89, 186 S.W.3d 229 (2004). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *See id.* In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Id.* This court will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *See Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001). This court takes pain to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Id.*

We turn then to the statutes in question. As already noted, statutory foreclosures are governed by Ark. Code Ann. §§ 18-50-101 - 18-50-117 (Repl. 2003). Our General Assembly created this statutory scheme by Act 53 of 1987, which states in part that the General Assembly found that "the present laws regarding foreclosures are awkward, requiring appraisals before the sale and giving the homeowner a one year statutory right of redemption that may not be waived." Act 53, § 19 of 1987. The General Assembly added: "this Act would provide an efficient and fair procedure for the liquidation of defaulted mortgage loans to the benefit of both the homeowner and the mortgage lender." *Id.*

The Arkansas Statutory Foreclosure Chapter does contain caveats, which are pertinent to the matter on appeal. First, the statutory foreclosure scheme *shall* not apply to a mortgage or deed of trust "encumbering trust property used primarily for agricultural purposes." Ark. Code Ann. § 18-50-116(c) (Repl. 2003).

Secondly, the statutory foreclosure scheme does not impair the right of anyone to assert "legal and equitable rights" in a court of competent jurisdiction so long as "any such claim or defense [is] asserted prior to the sale;" otherwise, the claim or defense is "forever barred and terminated." Ark. Code Ann. § 18-50-116(d)(2) (Repl. 2003). At issue in this case is the alleged discrepancy between § 18-50-116(c) and § 18-50-116(d)(2).

Cockrell concedes that Union Planters followed the required statutory procedures to foreclose regarding notice to Cockrell and the sale itself. Nevertheless, he asserts that a statutory foreclosure on agricultural land is void *ab initio*. We disagree.

██ We conclude that an assertion that the land to be foreclosed on is primarily used for agricultural purposes is precisely the kind of claim or defense that must be raised "prior to the sale or be forever barred and terminated." Ark. Code Ann. § 18-50-116(d)(2) (Repl. 2003). This precise language was added as part of Act 983 of 1999, which contained an Emergency Clause that reads in part:

> . . . it is immediately necessary for the fair and efficient administration of this act that, among other things, sales be considered final, and all rights of the grantor or mortgagor, be terminated, immediately upon the conclusion of the public foreclosure auction[.]

Act 983, § 16 of 1999. Here, however, Cockrell did not raise the agricultural-lands defense until well after the auction sale. This, of course, runs directly counter to the express language of Act 983 and the express policy in the Act that statutory foreclosures be fair and efficient and that foreclosure sales result in the termination of all rights of the mortgagor.

██ Cockrell, of course, maintains that the agricultural exception equates to a jurisdictional requirement that renders statutory foreclosure of agricultural land void from the inception. We disagree that the exception is jurisdictional. Rather, as already stated, it is a defense that must be asserted by the mortgagor prior to the foreclosure sale *in the interest of finality*. Here that was not done. Accordingly, we affirm the dismissal order of the circuit court.

Affirmed.