The Honorable Jerry R. Brown State Representative
1001 Oakwood Drive Wynne, Arkansas 72396-1801
Dear Representative Brown:
You have asked my opinion about the types of projects to which cities may appropriate moneys pursuant to A.C.A. § 14-174-101. As background for your questions, you explain what you take to be the legal test for spending moneys appropriated pursuant to section 14-174-101:
 Section 14-174-101 states that revenue obtained under the authority of Title 14 Chapter 174[1]
can only be expended after meeting a two-pronged test: (1) Will the revenue be used to stimulate the local economy and to support private sector job creation; and (2) none of the revenue can be used for general operating expenses.
With this "two-pronged test" in mind, you ask several questions:
 1. Did the legislature intend for cities and counties, or their agents as defined in A.C.A. § 14-174-107, to use revenue generated from this authority to fund only those programs and projects mentioned in A.C.A. §§ 14-174-105 and-106, that have a direct impact on attracting, retaining, and expanding new jobs and economic activity? [Emphasis added.] *Page 2 
 2. Did the legislature intend cities and counties, or their agents as defined in A.C.A. § 14-174-107, to use revenue generated from this authority to fund programs and projects mentioned in A.C.A. §§ 14-174-105 and-106 that have only an indirect impact on creating an expanding new jobs and economic activity? [Emphasis added.]
 3. At what point can a city or county be classified as using the funds for general operating revenue?
 4. Do all expenses have to meet the purposes in A.C.A. § 14-174-101?
 5. Considering the wording of the Emergency Clause, can revenue generated from the sales tax be used for performance-based incentives for private-sector job creation?
RESPONSE
Before responding to your questions, I must address a mistaken presupposition underlying them. In your background statement, you explain that moneys appropriated to some purpose under A.C.A. §§ 14-174-101 to-109 must meet the "two-pronged test" stated in section 14-174-101. The latter section does not establish a "two-pronged test" that must be met before any relevant expenditure is permitted. Instead, subsection 14-174-101 is merely a "purpose" statement. It directs the reader to other subsections that govern how a city or county may spend funds that have been appropriated for economic development. Thus, for example, subsection-101 directs the reader to other subsections — namely,-105,-106,-107, and-109 — to find the list of proper expenditures. Of course, common principles of statutory construction require us to interpret statutes as a whole with the ultimate goal of giving effect to the legislature's intent.[2] Thus, subsection-101 — standing alone — does not establish a test (as your background indicates), or create restrictions on whether expenditures must be "directly" or "indirectly" related to economic growth (as your first three questions all indicate). To determine whether an expense of a designated economic-development tax is proper, one must look to the sections indicated by subsection-101; namely,-105,-106,-107, and-109. *Page 3 
Now that this presupposition has been addressed, I can briefly respond to each of your questions. I cannot answer your first two questions because they introduce a distinction into the statute that is not found there. The statute does not explicitly address the question of how close the nexus must be between an actual expenditure, on the one hand, and accomplishing the purposes of economic development, on the other. Instead, the statute identifies certain expenditures that the legislature has determined will stimulate the local economy, in principle. So the legal question under the statute is whether any particular expenditure meets at least one item on the list of the pre-approved expenditures. Your third question is a question of fact that cannot be answered in the abstract. Your fourth question mistakenly presupposes that subsection 14-174-101 establishes a "two-pronged" test that all expenditures must meet. As explained above, the legislature has already listed those items that are approved as legitimate expenses that, in principle, stimulate economic growth. The answer to your fourth question is "no," for the reasons explained above.
Question 1: Did the legislature intend for cities andcounties, or their agents as defined in A.C.A. § 14-174-107, to userevenue generated from this authority to fund only those programsand projects mentioned in A.C.A. §§ 14-174-105 and-106, that havea direct impact on attracting, retaining, and expandingnew jobs and economic activity?
Question 2: Did the legislature intend cities and counties, ortheir agents as defined in A.C.A. § 14-174-107, to use revenuegenerated from this authority to fund programs and projectsmentioned in A.C.A. §§ 14-174-105 and-106 that have only anindirect impact on creating an expanding new jobs andeconomic activity?
To know what the "legislature intended," we have to evaluate the statute as a whole and read each word according to its common-sense meaning.[3] The distinction your questions raise — "direct impact" versus "indirect impact" — is alien to the statute. Neither phrase appears in the statute. Whether a particular expenditure is properly related to one of the approved items in subsections-105,-106,-107, or-109 is a question of fact. Accordingly, if your questions are asking about howrelated the actual expenditure must be to the approved list of expenditures, that is a question of fact that I cannot address in an official opinion. *Page 4 
Question 3: At what point can a city or county be classifiedas using the funds for general operating revenue?
This presents a question of fact that must be evaluated in each specific circumstance. You have, however, specifically referenced the city's use of its economic-development taxes to supplement its street budget. The legislature has permitted such a practice in subsection 14-174-105, which specifically permits the use of such funds for "construction, reconstruction, site development, contracts, and related costs associated with the creation, expansion, and rehabilitation of . . . streets and roads. . . ."
Question 4: Do all expenses have to meet the purposesin A.C.A. § 14-174-101?
The answer to this question was mostly dealt with in the introductory paragraph to this opinion. Subsection 14-174-101 does not establish a test that must be met.
Question 5: Considering the wording of the Emergency Clause,can revenue generated from the sales tax be used forperformance-based incentives for private-sector job creation?
The answer to your question, as worded, is "no." Strictly speaking, a statute's emergency clause, standing alone, does not authorize or prohibit certain actions; the statute itself does the authorizing or prohibiting. Instead, the emergency clause sometimes gives some insight into the legislature's intent for certain provisions of the statute.[4]
But before I can read the statute in light of the emergency clause to determine whether "performance-based incentives for private-sector job creation" are permitted, I must be clear on what you mean by that phrase. I am not entirely sure what all you contemplate by that term, but you do reference a "cash payment" from the city or county to the private company. One must always consult art. 12, § 5 of the Arkansas Constitution when discussing cash payments from cities or counties to private companies. That provision states: "No county, city . . . shall become a stockholder in any company . . . or obtain or appropriate money for, or loan its credit to, any corporation, association, institution, or individual." *Page 5 
Without more detailed facts and a more detailed definition of "performance-based incentives for private-sector job creation," I cannot further address the possible applicability of art. 12, § 5 in connection with such "incentives."
Assistant Attorney General Ryan Owsley prepared this opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL Attorney General
[1] Throughout this opinion, I assume that your reference to "revenue obtained under the authority" of A.C.A. §§ 14-174-101 et seq. is in line with the opinions issued from this office stating that these statutes are probably not a separate basis for cities or counties to levy taxes. See
Op. Att'y Gen. Nos. 2006-056, 2005-206.
[2] E.g., Kyle v. State,312 Ark. 274, 849 S.W.2d 935 (1993)
[3] Id.
[4] See, e.g., Hartford Fire Ins. Co. v. Sauer,358 Ark. 89, 97, 186 S.W.3d 229, 235 (2004).