SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CV–15–606

| | |
|---|---|
| SOUTHWEST POWER POOL, INC.<br>APPELLANT | Opinion Delivered March 31, 2016 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60CV-13-1018] |
| KANIS AND DENNY ROADS SUBURBAN WATER IMPROVEMENT DISTRICT NO. 349 OF PULASKI COUNTY, ARKANSAS, BY AND THROUGH ITS COMMISSIONERS BARRY HAAS, ROD NEAL, JAMES FONTENOY, SHIRLEY HERNDON, BILL ADAIR (DECEASED), AND MIKE REBICK<br>APPELLEE | HONORABLE W. MICHAEL REIF, JUDGE<br><br>REVERSED AND REMANDED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Southwest Power Pool, Inc. ("SPP"), appeals an order of summary judgment entered in favor of appellee Kanis and Denny Roads Suburban Water Improvement District No. 349 of Pulaski County ("the District"). On appeal, SPP argues that the Pulaski County Circuit Court erred in granting summary judgment on SPP's challenge to the reasonableness of an assessment of benefits and accompanying levy of taxes. We reverse and remand.

The District was formed in 2000 for the primary purpose of constructing water lines and related improvements to serve real properties within the District. The District was financed by bond issues; in order to repay its debts and fund general operations, the District

assessed the benefits accrued to each real property within the District resulting from the construction of the water lines, and levied taxes accordingly. The District completed construction of the water lines in 2006. At that time, the District conveyed and dedicated its easements and water lines to Central Arkansas Water ("CAW"), which has owned, operated, and maintained the easements and water lines since that time.

In 2010, SPP purchased 24.04 acres of unimproved real property lying within the District. SPP dedicated 3.2 acres to the City of Little Rock and constructed its commercial facility on the remaining 20.84 acres. This property had originally been part of an 80-acre tract, which was initially assessed in the amount of $138,078 in 2003. This assessment resulted in an annual levy of approximately $3,500, which was paid without protest from 2003 through 2012, and which SPP conceded was fair.[1] In 2013, the District reassessed SPP's property, determining that the assessed benefits to the 20.84 acres alone totaled $2,521,954. This assessment resulted in an annual levy of $60,653.

SPP appealed the 2013 reassessment to the District's board of equalization, composed of its assessor and commissioners. The reassessment was confirmed. SPP then filed its complaint in circuit court, asserting that the reassessment was wrong as a matter of law and as a matter of fact.[2] Specifically, SPP argued that an assessment was supposed to represent the

---

[1]According to SPP, the 2003 assessment resulted in an annual levy of $3,492; according to the District, the 2003 assessment resulted in an annual levy of $3,600.

[2]Pursuant to Arkansas Code Annotated section 14-92-228(c)(1) (Repl. 1998), the remedy against the levy of taxes by a suburban improvement district shall be by suit in chancery.

benefit to its property resulting from the District's construction of water lines, which had been completed in 2006, and that the subsequent construction of its facility on the property would not have changed that value. SPP also alleged that it had chosen not to use the District's water lines and instead connect to lines that had already been constructed by the owner of the original 80-acre tract and CAW. Thus, it contended, the presence of the District's water lines near its property was of no benefit to it, and the assessment should have been reduced to zero. For the same reason, SPP argued that it was exempt from assessment under Arkansas Code Annotated section 14-92-225(c)(2). SPP maintained that the reassessment violated procedural and substantive due process and equal protection and constituted a taking without just compensation. Finally, SPP alleged that the District had failed to follow statutory procedures for reassessment, including those having to do with notice.

The District answered and filed its motion for summary judgment. The District disagreed with SPP's interpretation of section 14-92-225(c)(2), arguing that it did not exempt SPP from assessment and that it allowed the District to assess property in proportion to the benefit conferred. The District also argued that it had provided proper notice to SPP and that the reassessment was reasonable. In response to the motion for summary judgment, SPP submitted the affidavit of Ray Owen, Jr., a licensed attorney and registered professional engineer who had experience serving as an assessor for over thirty improvement districts over a period of more than four decades. Owen opined that the reassessment of SPP's property was improper because there was little to no benefit accruing to the property as a result of the District's earlier construction of water lines. Additionally, Owen questioned the assessor's

calculations, which apparently valued SPP's land and the facility built upon it at $0.00 prior to the District's construction of its water lines. Owen also referenced minutes of the District's commissioners' meetings and emails between the District's assessor and commissioners, opining that the commissioners' input on the SPP reassessment was inappropriate and questioning whether the reassessment was independently made by the assessor as required by statute.

Following further briefing and two hearings, the circuit court granted the District's motion for summary judgment on all issues except notice.[3] The court found that a material physical change in property after an original assessment is a basis for reassessment and that all assessments and reassessments are presumptively reasonable (citing *Sugarloaf Dev. Co., Inc. v. Heber Springs Sewer Improvement Dist.*, 34 Ark. App. 28, 805 S.W.2d 88 (1991), and *Kelley Trust Co. v. Paving Improvement Dist. No. 47 of Ft. Smith*, 185 Ark. 397, 47 S.W.2d 569 (1932)). The court concluded that SPP's connection to a CAW line did not exempt it from assessment under section 14-92-225(c)(2); rather, SPP's "alternative water source is not supposed to be taken into consideration at all." In addition, the court determined that the reassessment was not void because of the communications between the District's commissioners and its assessor. SPP filed a motion for reconsideration, which was denied. Following a bench trial on the issue of the sufficiency of the 2013 notice of reassessment, the

---

[3]The circuit court denied the District's motion for summary judgment on the issue of notice and also denied a subsequent motion for summary judgment on the issue of notice filed by SPP, reserving this issue for trial.

SLIP OPINION

circuit court entered a final order granting judgment in favor of the District.[4] SPP filed a timely notice of appeal.

SPP's appeal challenges the circuit court's entry of summary judgment in favor of the District. The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *See, e.g.*, *Anderson's Taekwondo Ctr. Camp Positive, Inc. v. Landers Auto Group No.1, Inc.*, 2015 Ark. 268. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *See id.* The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact. *See id.* After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *See id.*

---

[4]SPP's property was also reassessed in 2014; that reassessment was unchanged from the 2013 reassessment. SPP challenged the 2014 reassessment, and the board of equalization confirmed it. SPP filed an amended complaint contesting the 2014 reassessment, and the District filed an amended motion for summary judgment to address it. The circuit court's order granting summary judgment applied to the 2014 reassessment as well as the 2013 reassessment. Following entry of the summary judgment, SPP's property was again reassessed in 2015, with the assessed benefit remaining the same as in the 2013 and 2014 reassessments. SPP challenged the 2015 reassessment, the board of equalization confirmed it, and SPP filed a second amended complaint contesting it. The District renewed its motion for summary judgment, asking the circuit court to apply its earlier ruling granting summary judgment to the 2015 reassessment as well. This motion was granted.

On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *See id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *See id.*

SPP raises four points on appeal: (1) that the circuit court erred in granting summary judgment in favor of the District; (2) that the District's commissioners improperly assumed the role of the assessor, which violated statutory guarantees and denied SPP due process; (3) that the amount of the reassessment and the erroneous way in which it was determined are very much in dispute and present issues for trial; and (4) that any ambiguity in section 14–92–225(c)(2) is required to be resolved in favor of the taxpayer. Our analysis begins and ends with SPP's fourth point on appeal because it raises a threshold issue and is dispositive.

SPP argues that section 14–92–225(c)(2) prohibits any assessment of its facility. Section 14–92–225(c) provides as follows:

> (1) The assessment shall embrace not merely the lands, but shall embrace all railroads, tramroads, telegraph lines, telephone lines, pipelines, and other improvements on real estate that will be benefited by the acquiring or making of the improvement.

> (2) No assessment shall apply against any pipelines or other improvements which are extensions of or connected to the pipeline distribution system or other improvements within any city adjacent to the district.

Ark. Code Ann. § 14-92-225(c) (Repl. 1998). The parties have totally opposing views concerning the meaning of the plain language of this statute. According to SPP, the statute can only mean that its facility cannot be assessed because it is an improvement that is connected to a CAW line within the City of Little Rock, which is adjacent to the District. The District reads the statute differently, contending that subsection (c)(1) specifically requires the assessment to embrace SPP's facility and that subsection (c)(2) specifically excludes from consideration SPP's connection to a CAW line.

The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *See, e.g.*, *Rose v. Harbor E., Inc.*, 2013 Ark. 496, 430 S.W.3d 773. We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *See id.* The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the drafting body. *See id.* In reviewing issues of statutory interpretation, we first construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *See id.* It is axiomatic that this court strives to reconcile statutory provisions to make them consistent, harmonious, and sensible. *See id.*

We find SPP's interpretation of the plain language of section 14-92-225(c) to be correct. It seems that the parties' disagreement stems from confusion over the meaning of the word "improvement" within the statute. Section 14-92-225 as a whole makes clear that the

benefits to be assessed and taxed are those arising from the improvements constructed by the improvement district, not those arising from improvements constructed on the taxpayer's real property by the taxpayer. For example, subsection (a)(1) states that the assessor shall "assess the benefits which will accrue to the real property within the district from the acceptance of the gift of improvement or facilities, the purchase of the improvement or facilities, or the construction of the improvement or facilities" that the district's board of commissioners has voted to accept, purchase, or construct. Ark. Code Ann. § 14–92–225(a)(1). Subsection (a)(2) states that the assessor will assess "all benefits that will accrue to the landowners of the district by reason of the acceptance, purchase, or construction of the proposed improvement or facilities, sometimes referred to as 'improvement.'" Ark. Code Ann. § 14–92–225(a)(2). Subsection (b) describes the process to be undertaken by the assessor: he or she shall determine the "Assessed Value of Lands Prior to Improvements" and the "Assessed Value of Lands After Improvements," and "[i]f the assessed value of land after improvements is greater than the assessed value of land before improvements . . . then the difference between the two shall be the assessed benefits that will accrue to each tract by reason of the improvement." Ark. Code Ann. § 14–92–225(b)(1) & (2)(A)(i).

Subsection (c) is somewhat different in that it uses the word "improvement" to refer to both improvements made by the improvement district and those made by the taxpayer. We read subsection (c)(1) to mean that an assessment shall take into account the land plus any improvements on the land constructed by the taxpayer—such as SPP's commercial facility—that will be benefited by the construction of improvements by the improvement

district. It follows that the word "improvements" appearing in the first clause of subsection (c)(2) would refer to those improvements made on the land by the taxpayer—again, such as SPP's commercial facility. Thus, "[n]o assessment shall apply against" SPP's facility because it is "connected to the pipeline distribution system" within the City of Little Rock. Ark. Code Ann. § 14-92-225(c)(2).

The District's interpretation of subsection (c)(2), which the circuit court accepted as correct, does not comport with the plain language of the statute. If the General Assembly had intended to say that a taxpayer's connection to an adjacent city's waterworks system could not be considered in the assessment process, it presumably would have said that. The "[n]o assessment shall apply" language simply does not lend itself to that interpretation. In addition, as SPP points out, any ambiguity in the statute must be resolved in favor of it as the taxpayer. *See, e.g., Cent. & S. Cos., Inc. v. Weiss*, 339 Ark. 76, 3 S.W.3d 294 (1999).

Moreover, we are unpersuaded by the District's argument that section 14-92-225(c)(2) evidences the General Assembly's intent to protect improvement districts from encroachment by neighboring municipalities. Section 14-92-219 sets out the purposes for which a suburban improvement district may be organized, including to construct a waterworks system and "to operate and maintain any such waterworks system it may purchase, construct, or own." Ark. Code Ann. § 14-92-219(1) (Supp. 2015). It is clear that some suburban improvement districts, including the District involved here, are organized for the purpose of constructing a waterworks system or related improvements, but not for the purpose of operating or maintaining that system. Here, as noted above, the District conveyed all of its water lines and

SLIP OPINION

easements to CAW upon completion of construction, and CAW has owned, operated, and maintained the lines since then. The District is not, and has never been, a source of water. Its water lines were apparently always intended to tie onto CAW lines. Section 14-92-225(c)(2) covers this precise situation, providing that improvements attached to an adjacent city system are not subject to assessment.

For these reasons, we hold that SPP's commercial facility, an improvement on its property that is connected to the City of Little Rock's waterworks system, cannot be assessed. Accordingly, the 2013 reassessment, and the 2014 and 2015 reassessments that followed, are invalid. We reverse the circuit court's grant of summary judgment and remand for entry of an order consistent with this opinion.[5]

Reversed and remanded.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *M. Samuel Jones III*, for appellant.

*Quattlebaum, Grooms & Tull, PLLC*, by: *John E. Tull III*, *Joseph R. Falasco*, and *R. Ryan Younger*, for appellee.

---

[5]Because the issue is likely to arise on remand, we note that the 2003 assessment amount covered the entire 80-acre tract, of which SPP now owns only 20.84 acres. *See, e.g.*, *Rees v. Smith*, 2009 Ark. 169, 301 S.W.3d 467 (reversing grant of summary judgment and addressing remaining arguments that were likely to arise again on remand).