

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-915

| | |
|---|---|
| | Opinion Delivered: April 26, 2017 |
| PULASKI COUNTY SPECIAL SCHOOL DISTRICT<br><br>APPELLANT<br><br>V.<br><br>JANICE LEWIS AND PAM FITZGIVEN<br>APPELLEES | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NOS. 60CV-14-3135, 60CV-14-3136]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Pulaski County Special School District (PCSSD) appeals from the Pulaski County Circuit Court's final judgments in favor of appellees Janice Lewis and Pam Fitzgiven. On appeal, appellant contends that the trial court erred when it ruled that the 15-minute physical-activity period in question was "noninstructional" duty under Arkansas Code Annotated section 6-17-117(2)(b) (Repl. 2013). We affirm.

Appellees were certified teachers for all relevant time periods in the PCSSD. Lewis taught second grade, and Fitzgiven taught fifth grade. In 2003, the Arkansas Legislature passed a law that precluded school districts from assigning teachers more than 60 minutes a week of "noninstructional duties." Ark. Code Ann. § 6-17-117. Subsection (b) states that "'noninstructional duties' means the supervision of students before or after the instructional day begins or ends for students or for the supervision of students during breakfasts, lunches, *recesses*, or scheduled breaks." Ark. Code Ann. § 6-17-117(b) (emphasis added). Then, in

2007, the Arkansas Legislature passed a law that required kindergarten through sixth grade students to have 90 minutes of "physical activity" each week, which could include recess, in addition to another specific time period of actual "physical education" instruction with a certified teacher. Ark. Code Ann. § 6-16-132 (Supp. 2015).

Prior to the 2012–2013 school year, PCSSD had "recess" built into the students' schedules in kindergarten through sixth grade. During recess, the students were supervised by paid monitors, not certified teachers. The teachers were permitted to grade papers, call parents, and plan and prepare for the next class. Starting in the 2012–2013 school year, PCSSD changed its policy. PCSSD eliminated the "recess" period and replaced it with a "physical-activity" period. Each period lasted 15 minutes. The main, if not only, difference between the previous recess period and the new physical-activity period was that during this new physical-activity period certified teachers, instead of the paid monitors, were required to supervise the children. Certified teachers were assigned on a rotating basis to supervise students during the physical-activity period. Because certified teachers were required to supervise students for an additional 15 minutes per day, the accumulation of that new supervision time allegedly ran afoul of and violated the 60-minute maximum-weekly supervision time as prescribed in section 6-17-117.

In 2014, appellees filed separate but nearly identical complaints for monetary damages and for injunctive relief. Appellees alleged that the new physical-activity period was noninstructional and that because PCSSD required them to supervise the new physical-activity period, PCSSD was requiring them to perform more than 60 minutes of "noninstructional duties" each week in violation of section 6-17-117. Therefore, appellees

2

requested damages for the time they had already expended in excess of their contracts and an injunction precluding PCSSD from assigning them more than 60 minutes of "noninstructional duties" per week in the future. Appellant generally denied the allegations, and a bench trial was held.

Willie Morris testified that he was the director of standards for the Arkansas Department of Education and was responsible for ensuring that school districts are in compliance with all the state standards. He explained that students were required to have 60 minutes of physical education in addition to 90 minutes of physical activity each week at that time. The physical-activity periods were included in the students' "instructional day." Although schools were not required to have "recess," a scheduled "recess" counted toward the 90 minutes of required physical activity and would be considered part of the students' 6 hours of minimum-required instructional-time per day. Lesson plans for the physical-activity period were not required.

Janice Warren, the director of elementary education for PCSSD, testified that physical-activity periods were considered part of a students' instructional day. Therefore, she opined that appellees' claims should fail because PCSSD's schedule listed the fifteen minutes as a "physical-activity period"—not "recess." Warren further explained that she had instituted physical-activity periods instead of recess in 2012 because she was under the misunderstanding that recess would not count toward the required 90 minutes of physical activity per week, and she wanted to comply with all requirements. However, she admitted that the only difference between recess and a physical-activity period was whether a certified teacher was present with the students.

SLIP OPINION

After hearing oral arguments and after the parties filed posttrial briefs, the trial court found in favor of appellees, awarding Lewis $5,840.99 and Fitzgiven $6,095.98. Appellees filed a motion for a ruling on their requests for injunctive relief, and PCSSD filed a motion for findings of fact and conclusions of law. Subsequently, the trial court entered final judgments, awarding each teacher additional monetary damages for time incurred since the previous award and making the following additional relevant findings:

2. Beginning with the 2012–2013 school year, the Plaintiff has been assigned to supervise elementary children playing on the playground at her school for 15 minutes each school day or 75 minutes each week.

3. This 15-minute daily period of time was after the student instructional day began and before the student instructional day ended.

4. The 15-minute daily period of time was not part of the students' lunch period.

5. The Plaintiff's role during this time was to watch the students on the playground to make sure they were safe and the students were free to do what they wanted on the playground.

6. At the Plaintiff's school, this daily 15-minute period was "recess" as that term is used in Ark. Code Ann. § 6-17-117(b).

7. In the years before 2012−2013, non-certified employees of PCSSD supervised the students during the 15 minutes of recess time.

8. Sometime after the start of the 2012−2013 school year, PCSSD changed the title of this 15-minute period on the school duty schedules from "recess" to "activity" time.

9. While the title changed, the Plaintiff's responsibilities on the playground and what the students did on the playground at the Plaintiff's school did not change.

10. Designating this daily 15-minute period an "activity" period was prompted when an employee from the Department of Education provided Ms. Janice Warren with a copy of the Arkansas Department of Education Rules Governing Nutrition and Physical Activity Standards and Body Mass Index Protocols in Arkansas Public Schools ("Rules").

4

11. The Department of Education does not require schools to have certified employees supervise students at recess; a non-certified employee can supervise students during recess.

12. *Ms. Janice Warren, who started working for PCSSD in May of 2012, was under the mistaken belief that only certified employees could supervise the students during this daily 15-minute period.*

13. State Department employee Willie Morris testified that under the Rules a daily recess period will count towards the 90 minutes of weekly physical activity required by the Rule but that physical activity is what should be occurring during the recess period.

14. There was no testimony or evidence that the Department of Education had ever cited PCSSD or informed PCSSD that this "activity" or "recess" time would not count towards the 90 minutes of physical activity under the Rules.

15. However, whether this daily 15-minute period should or should not count as part of the 90 minutes of physical activity under the Rules is not at issue in this case. That is a matter between the Department of Education and the Defendant.

16. *What is at issue in this case is whether this daily 15-minute period at the Plaintiff's school is "recess" under Ark. Code Ann. § 6-17-117(b).*

17. *The Court concludes that this daily 15-minute period is "recess" under Ark. Code Ann. § 6-17-117(b) and, therefore, the supervision of the students by the Plaintiff during this time is a "non-instructional duty" under Ark. Code Ann. § 6-17-117(b).*

18. Beginning with the 2012–2013 school year the Plaintiff was also assigned at least 60 minutes of non-instructional duty each week to supervise students before the instructional day began or after the instructional day ended as the students arrived and departed from school.

19. One purpose of the Non-instructional Duty law, as specifically stated in the law, is to provide additional time for teachers to use for "instructional purposes," such as contacting parents, assessing student performance and organizing classrooms. Ark. Code Ann. § 6-17-117(c).

20. When teachers are assigned more than 60 minutes of non-instructional duty, it deprives the teacher of the use of this time for instructional purposes.

 

21. In the years before 2012–2013, the Plaintiff used these 15-minute periods of time to do things related to instructional planning such as grading papers, contacting parents, organizing her classroom and preparing instructional materials.

22. Starting with the 2012–2013 school year, the Plaintiff has not been able to use this daily 15-minute period for those planning activities as she is now required to supervise the children during this time.

23. The Plaintiff expressed a desire to have this additional time to perform instruction duties as defined in the law.

24. Future awards of money damages are not an adequate remedy for the loss of this time because (a) damages will not provide the Plaintiff with what she is entitled to under the law, which is additional time for the Plaintiff to use for instructional purposes, and (b) continually coming back to court for additional damage awards for non-instructional duties assigned beyond the 60 minutes deprives the Plaintiff of her right under Ark. Code Ann. § 6-17-807(9) to decide whether she wants to enter into a separate contract with the District should the Plaintiff elect to perform more than 60 minutes of non-instructional duties each week.

25. Therefore, pursuant to Ark. R. Civ. P. 52(b)(1), the Court hereby enjoins the Defendant from assigning the Plaintiff more than 60 minutes of non-instructional duties each week unless the Plaintiff agrees to enter into a separate contract with the Defendant to perform these duties as provided for in Ark. Code Ann. § 6-17-807(g).

(Emphasis added.) This appeal followed.[1]

## I. *Standard of Review*

Our standard of review following a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.*

---

[1]We consolidated the appeals from both cases on the request of the parties on November 16, 2016.

Furthermore, in a bench trial, a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *Id.* However, a trial court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Helena-W. Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 268 S.W.3d 879 (2007).

Additionally, this court's rules regarding statutory construction are clear and well established. This court reviews issues of statutory interpretation de novo and is not bound by the circuit court's determination. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179. However, this court will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *Cockrell v. Union Planters Bank*, 359 Ark. 8, 194 S.W.3d 178 (2004). The basic rule of statutory construction is to give effect to the intent of the legislature. *Calaway v. Practice Mgmt. Servs., Inc.*, 2010 Ark. 432. Where the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, this court construes it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court construes the statute so that no word is left void, superfluous or insignificant, and this court gives meaning and effect to every word in the statute, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Brown v. State*, 375 Ark. 499, 292 S.W.3d 288 (2009). However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Brock, supra.* It is axiomatic that this court strives to reconcile statutory provisions to make them consistent, harmonious, and sensible. *SW. Power Pool, Inc. v. Kanis*



*& Denny Roads Suburban Water Improvement Dist. No. 349 of Pulaski Cty.*, 2016 Ark. 135, 489 S.W.3d 140.

## II. *Fifteen-Minute Physical-Activity Period*

Appellant argues that the trial court erred when it ruled that the 15-minute physical-activity period was "noninstructional" duty under section 6-17-117(b). Appellant contends that PCSSD did not have "recess" and that a "physical-activity period" was not part of a teacher's noninstructional duties because it was considered part of a student's instructional day based on Morris's testimony. We disagree.

Arkansas Code Annotated section 6-17-117 provides,

> (a)(1) The purpose of this section is to provide additional time for instructional purposes and to reduce the amount of time for noninstructional duties.
>
> (2) Any teacher assigned more than sixty (60) minutes of noninstructional duties per week shall be contracted in accordance with § 6-17-807(g).
>
> (b) As used in this section, "*noninstructional duties*" means the supervision of students before or after the instructional day begins or ends for students or for the supervision of students during breakfasts, lunches, *recesses*, or scheduled breaks.
>
> (c) As used in this section, "*instructional purposes*" means activities initiated by the teacher related to teaching duties, including, but not limited to, contacting parents, assessing student performance, documenting student performance, organizing the classroom, preparing instructional materials, and other teaching responsibilities related to instructional planning and the direct instruction of students.

(Emphasis added.) We note that the statute does not define the term "recess." Because we determine legislative intent from the ordinary meaning of the language used, we note that "recess" is defined as "a suspension of business or procedure (as of a legislative body, court, school) for a comparatively short time" or "a period lasting from 10 minutes to an hour that

intervenes between the class or study periods of a school day and is used for rest, play, or lunch." *Webster's Third New International Dictionary* 1895 (2002).

The trial court's finding that the 15-minute period was recess under the facts of this case is not clearly erroneous. The statute is clear and unambiguous in stating that "recess" is noninstructional for purposes of section 6-17-117(a)(2). The trial court specifically found that

- "PCSSD changed the title of [the] 15-minute period on the school duty schedules from 'recess' to 'activity' time";

- The "daily 15-minute period was 'recess' as that term is used in [section 6-17-117(b)]";

- "While the title changed, the [supervisory] responsibilities on the playground and what the students did on the playground at the Plaintiff's school did not change"; and

- The teachers were "also assigned at least 60 minutes of non-instructional duty each week to supervise students before the instructional day began or after the instructional day ended as the students arrived and departed from school."

We cannot say that these findings were clearly erroneous. In fact, even Warren testified at trial that the only difference between the activities of "recess" and "physical-activity" was whether a certified teacher was present. In other words, the title change was simply a matter of semantics, and the 15-minute periods still met the common meaning and practice of the definition of "recess" and hence were "noninstructional duties" under section 6-17-117(b).

9

Therefore, PCSSD's arguments on appeal lack merit given the clear and unambiguous language contained in the statute.

The amicus curiae[2] further argues that the trial court erred in focusing on whether the 15-minute period was "recess" and should have instead determined whether the activity was for "instructional purposes," defined as "activities initiated by the teacher related to teaching duties" under Arkansas Code Annotated section 6-17-117(c). In other words, the amicus curiae argues that the trial court focused on the wrong part of the statute. However, the amicus curiae admits that the trial court made no determination as to whether the activities were "related to teaching duties" but looked only at whether the activity could be called "recess." It is well settled that in order to preserve an issue for appellate review, an appellant must obtain a specific ruling from the trial court. *Fordyce Bank & Trust Co. v. Bean Timberland, Inc.*, 369 Ark. 90, 251 S.W.3d 267 (2007). We cannot review a matter on which the trial court has not ruled, and a ruling should not be presumed. *Id.*; *TEMCO Cons., LCC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651. Furthermore, the amicus curiae must take a case as it finds it and cannot introduce new issues at the appellate level. *Equilease Corp. v. U.S. Fidelity & Guaranty Co.*, 262 Ark. 689, 565 S.W.2d 125 (1978).

Moreover, even if we were to address the amicus curiae's arguments, there was no evidence introduced at trial from which we could have deduced or inferred that the 15-minute period was "related to teaching duties" under the policies and practices of PCSSD.

---

[2]We granted the Arkansas School Board Association, Camden-Fairview School District, El Dorado School District, Hope School District, Jacksonville/North Pulaski School District, Lafayette County School District, and West Memphis School District permission to file an amicus curiae brief in support of appellant.

Appellee Fitzgiven testified that during the 15-minute physical-activity period some children played basketball, some children played football, and some children played on the playground. Students chose what they wanted to do. Appellee Lewis testified similarly and stated that the children were permitted to do "anything that ke[pt] them busy." Upon further questioning by the court, Lewis testified that the students were also permitted to just sit and talk and that some students just did their homework. Director Willie Morris additionally testified that no lesson plans were required by the teachers for the physical-activity period. Thus, even if we were to consider the language in section 6-17-117(c), we hold that the 15-minute-activity period practiced by PCSSD was not related to teaching duties, and we must affirm.

Affirmed.

ABRAMSON and VAUGHT, JJ., agree.

*Bequette & Billingsley, P.A.*, by: *George J. Bequette, Jr.*, and *W. Cody Kees*, for appellant.

*McDaniel, Richardson & Calhoun PLLC*, by: *Scott P. Richardson*, for amici curiae.

*Mitchell, Blackstock, Ivers & Sneddon, PLLC*, by: *Clayton Blackstock*, for appellees.

SLIP OPINION