Cite as 2019 Ark. App. 485

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-18-994

| | |
|---|---|
| DAVID L. MCKIM<br><div align="right">APPELLANT</div> | **Opinion Delivered:** October 23, 2019 |
| V. | APPEAL FROM THE FAULKNER<br>COUNTY CIRCUIT COURT<br>[NO. 23CV-15-208] |
| JACK B. SULLIVAN; MITCHELL<br>COLLISION AND TOWING CENTER,<br>INC., D/B/A JIM SMITH COLLISION<br>AND WRECKER, JIM SMITH<br>WRECKER SERVICE, AND SMITH<br>COLLISION AND WRECKER;<br>SAMUEL MITCHELL, INDIVIDUALLY;<br>AND SAM MITCHELL,<br>INDIVIDUALLY | HONORABLE CHRISTOPHER RAY<br>CARNAHAN, JUDGE<br><br>REVERSED AND REMANDED |
| <div align="right">APPELLEES</div> | |

## KENNETH S. HIXSON, Judge

Appellant David L. McKim appeals from two separate orders of the Faulkner County Circuit Court granting summary judgment in favor of appellees Jack B. Sullivan (Sullivan) and Mitchell Collision and Towing Center, Inc., d/b/a Jim Smith Collision and Wrecker, Jim Smith Wrecker Service, and Smith Collision and Wrecker; Samuel Mitchell, individually; and Sam Mitchell, individually (collectively referred to as the Mitchell defendants) in a negligence action arising from a motorcycle accident. On appeal, McKim contends that the circuit court erred in granting summary judgment in favor of Sullivan and

the Mitchell defendants.[1]  We reverse and remand for further proceedings consistent with this opinion.

## I. *Relevant Allegation of Facts*

This case involves a motor-vehicle accident between a motorcycle and a motor vehicle that occurred on a county road outside Greenbrier, Arkansas.  Generally, McKim, the rider of the motorcycle, alleged that his motorcycle struck debris in the road causing him to lose control and cross the center line striking an oncoming motor vehicle.  An accurate description of the scene is helpful to understand the sequence of events that allegedly led to the accident.  Elliott Road could be commonly described as a two-lane asphalt-paved road going east/west in the county.  The speed limit is thirty-five miles an hour.  Traveling west, approaching the scene of the accident, Elliott Road has a sharp banking curve to the right that is described as a blind curve.  Coming out of the blind curve on the right (north) is a driveway leading up to a residence at 288 Elliott Road owned by Sullivan's neighbor.[2]  That driveway is constructed of gravel.  Just a few feet farther down Elliott Road on the left (south) is a driveway leading to a residence at 293 Elliott Road, owned by appellee Sullivan.  Sullivan's driveway is constructed of dirt.  The two driveways do not precisely align across Elliott Road from one another; rather, a vehicle traveling west

---

[1]This is the second time this case is before us.  Previously, McKim appealed from the circuit court's order granting summary judgment in favor of Sullivan.  However, we dismissed that appeal without prejudice because the Arkansas Rule of Civil Procedure 54(b) certificate failed to contain specific findings explaining the hardship or injustice that would result if an immediate appeal was not permitted.  *See McKim v. Sullivan*, 2018 Ark. App. 260, 548 S.W.3d 835.  The instant appeal is filed pursuant to a final order.

[2]The owner of property at 288 Elliott Road is not contained in the record and is simply referred to herein as "Sullivan's neighbor."

would pass the neighbor's gravel driveway to its right before it passed Sullivan's dirt driveway to its left.

Appellant McKim alleges that at around 8:45 a.m. on Wednesday, June 4, 2014, he was riding his motorcycle to work in the westbound lane of Elliott Road. McKim testified via deposition that as he came around the blind curve to the right, he saw dirt and gravel in the road. McKim testified that the trail of gravel "was coming from – – more from my right [from the neighbor's gravel driveway] to my left [toward Sullivan's dirt driveway], with the majority of the gravel in the center of my [westbound] lane." Further, McKim testified that the source of the gravel in the road was from the neighbor's gravel driveway almost directly across from Mr. Sullivan's dirt driveway. He testified that the type of gravel in the neighbor's driveway was the same as what was in the road. McKim further alleged that he swerved his motorcycle to the right toward the neighbor's driveway to avoid the dirt and gravel in his lane. McKim struck some dirt or gravel which caused him to lose control, lay his motorcycle down, and slide into an oncoming eastbound motor vehicle.

Days before the motor-vehicle accident, on Sunday evening, June 1, Sullivan had been backing his tractor-trailer up his dirt driveway when it got stuck in a ditch along his passenger side. The following morning, Monday, June 2, Sullivan employed Jim Smith's Wrecker Service to extricate his tractor-trailer from the driveway ditch. McKim alleged in his complaint that as a result of the extrication of the tractor-trailer, dirt and gravel were strewn across Elliott Road. McKim further alleged that on June 4, two days after the extrication of the tractor-trailer, the dirt and gravel from the extrication remained on the roadway, which caused him to lose control of his motorcycle.

3

McKim sued Sullivan and Jim Smith, individually and d/b/a Jim Smith Collision and Wrecker Center, Inc. (collectively the Smith defendants), alleging they were negligent by failing to remove the dirt and gravel from the roadway. Sullivan filed an answer generally denying liability.[3] There apparently existed some uncertainty as to the ownership of the Smith defendants or its relationship to another towing service. As a result, McKim subsequently filed an amended complaint and added Mitchell Collision and Towing Center, Inc. d/b/a Jim Smith Collision and Wrecker, Jim Smith Wrecker Service, and Smith Collision and Wrecker; Samuel Mitchell, individually; and Sam Mitchell, individually (collectively referred to as the Mitchell defendants), as additional defendants. The amended complaint generally alleges that the collective "Defendants" were negligent without alleging any specific facts to explain how the Mitchell defendants in particular were negligent.

## II. *Motion for Summary Judgment*

After discovery commenced, Sullivan filed a motion for summary judgment. Neither the Smith defendants nor the Mitchell defendants joined in this motion. In his motion, Sullivan argued that he did not owe either a common-law or statutory duty to prevent natural materials from being deposited onto a public roadway or require their removal. Sullivan more specifically argued that there "is no common law duty imposed on a landowner such as Sullivan to control natural substances on his property for the benefit of users of a public highway." Further, Sullivan claimed that Arkansas Code Annotated section 27-51-1405 (Repl. 2010) does not impose a statutory duty in this case because the statute

---

[3]The record does not contain an answer filed by the Jim Smith defendants; however, there is some language in the record that vaguely indicates that the Jim Smith defendants did file an answer.

4

does not apply to "*natural objects*," such as dirt, gravel, rocks, or mud. Arkansas Code Annotated section 27-51-1405 provides that

    (a) No person shall throw or deposit upon any highway any glass bottle, glass, nails, tacks, wire, cans, or any other substance likely to injure any person, animal, or vehicle upon the highway.

    (b) Any person who drops or permits to be dropped or thrown upon any highway any destructive or injurious material shall immediately remove it or cause it to be removed.

    (c) Any person removing a wrecked or damaged vehicle from a public highway, as defined by § 27-51-101, shall remove any glass or other injurious substance dropped upon the public highway from the vehicle.

Additionally, Sullivan argued that McKim could not prove that "Sullivan breached a duty owed to [McKim] as Sullivan had no duty to prevent and/or remove the gravel debris at issue from Elliott Road, which allegedly caused [McKim] to lose control of his motorcycle." Thus, Sullivan argued that he was entitled to judgment as a matter of law.

McKim filed a response denying that Sullivan was entitled to a judgment as a matter of law. McKim argued that Sullivan had a statutory duty under both subsections (a) and (b) of Arkansas Code Annotated section 27-51-1405. McKim argued that subsection (a) imposes a duty as it prohibits any person from depositing on any highway any "substance likely to injure any person, animal, or vehicle upon the highway." McKim further argued that subsection (b) imposes a duty as it states that any person who "drops or permits to be dropped or thrown upon any highway any destructive or injurious material shall immediately remove it or cause it to be removed." McKim specifically disagreed with Sullivan's contention that the statute is limited to *unnatural* objects. Therefore, McKim

5

alleged that both subsections of the statute imposed a duty that Sullivan breached. The parties attached excerpts from the relevant depositions to their pleadings.

McKim testified by deposition that he lives on Elliott Road and drives to and from work along that same stretch of road six days a week. The tractor-trailer was extricated on Monday morning, June 2. McKim stated that he drove this same stretch of Elliott Road to and from work on Monday, June 2 and Tuesday, June 3. The accident occurred around 8:45 a.m. on Wednesday, June 4. McKim testified that he was riding his motorcycle to work. The speed limit is thirty-five miles an hour. McKim stated that as he came out of the blind curve to the right, he saw some dirt and gravel in the middle of his lane about twenty yards ahead and that he decreased his speed to around twenty-five miles an hour. The gravel appeared to come from the right side of the road from Sullivan's neighbor's driveway. McKim swerved to the right to avoid the dirt and gravel and lost control of his motorcycle. McKim stated that he laid down his motorcycle and slid across the road into the path of an oncoming motor vehicle.

Gary Middleton testified by deposition that he is the tow truck operator who was dispatched to pull Sullivan's tractor-trailer out of the ditch. Middleton testified that when he arrived, he saw Sullivan's tractor-trailer in the ditch alongside Sullivan's dirt driveway. Middleton described the ditch as a thirty-six-inch-deep ditch sloping away from the driveway. The area around the tractor-trailer was saturated from rain to such an extent that Middleton refused to drive through an adjacent yard to position his tow truck and further testified that the heel of his work boot sunk into the ground. Middleton positioned his tow truck on Sullivan's driveway so he could affix a 17,000-pound capacity strap to the trailer

6

jacks. Middleton testified that when he picked up the corner of the trailer with his boom, the pinch was released, and Sullivan drove the tractor and trailer out of the ditch and pulled across Elliott Road into his neighbor's gravel driveway. Thereafter, Sullivan was able to back his tractor-trailer up his dirt driveway. Middleton testified that when he arrived at the scene, he did not notice any dirt or gravel that had been transferred onto Elliott Road. Further, Middleton testified that when he left, he did not notice any dirt or gravel on the roadway, and if he had seen it, he would have cleaned it up. Middleton stated that cleaning up debris is a major part of working an accident so that other vehicles do not strike the debris. However, he would not go out to clean someone's driveway. Instead, he would "clean everything that has to do with the car wreck itself . . . mainly bumpers, glass, things like that."

Two days after Middleton pulled Sullivan's tractor-trailer out of the ditch, Officer Martin Clifford was dispatched to the scene of McKim's June 4 accident. Officer Clifford testified by deposition that he "located loose gravel in the middle of the roadway, which I thought might have contributed to the crash, as I was getting photographs of the crash scene." He explained that there was a "small bit of gravel . . . on the westbound side. And to me it just made sense he hit that gravel, slid, lost it, and impact here." Officer Clifford additionally testified that it would be impossible to determine where the gravel had come from because there are a lot of gravel driveways located on Elliott Road. In fact, he said that there was loose gravel "all over this road."

After Sullivan had filed his reply to McKim's response, a hearing was held on Sullivan's motion for summary judgment, and the parties argued their respective positions.

7

Subsequently, McKim filed a supplemental brief in support of his response, and Sullivan filed a reply to the supplemental brief. After the posthearing briefs had been filed, the circuit court filed an order granting Sullivan's motion for summary judgment on March 23, 2017. In its order, the circuit court made the following relevant findings:

2. The Court finds that the Plaintiff must prove the following elements to establish a prima facie negligence cause against Sullivan: 1) the Plaintiff sustained damages, 2) Sullivan was negligent, and 3) that negligence was the proximate cause of Plaintiff's damages. *Ambrus v. Russell Chevrolet Co.*, 327 Ark. 367, 937 S.W.2d 183 (1997). To prove any negligence on the part of Defendant Sullivan, Plaintiff must show a failure to exercise proper care in the performance of a legal duty, which Sullivan owed to Plaintiff under the circumstances. *Cent. Okla. Pipeline, Inc. v. Hawk Field Serv., LLC*, 2012 Ark. 157, 400 S.W.3d 701. Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other. *Id.* Absent a duty, there can be no breach and no liability sounding in negligence. *Federal Savings Loan Corp. v. Smith*, 721 F.Supp. 1039, 1048 (E.D. Ark. 1989). This question of what duty, if any, is owed a Plaintiff alleging negligence is always a question of law. *Lawhon Farm Supply, Inc. v. Hayes*, 316 Ark. 69, 71, 870 S.W.2d 729, 730 (1994).

3. Arkansas has no requirement that natural materials be removed from a roadway or prevent their deposit thereon. Defendant points out the closest statute addressing this issue is Ark. Code Ann. § 27-51-1405. That statute speaks of the throwing or depositing of manufactured or unnatural substances on a roadway, not dirt or the substance of the roadway itself. Defendant's reasoning, that this Court adopts, that the intent of the statute is to prevent unnatural dangerous objects from entering the roadway. Natural objects like dirt, gravel debris, rocks, and/or mud are not identified in the above statute. Because Sullivan owed no statutory duty to Plaintiff to prevent natural debris from entering the roadway, no duty to remove said natural debris accrued to Sullivan. Additionally, the common law enforces no duty on a landowner such as Sullivan to control natural substances on his property for the benefit of users of a public highway. *Driggers v. Locke*, 323 Ark. 63, 913 S.W.2d 269 (1996).

4. Because Plaintiff cannot prove that Sullivan owed a duty to Plaintiff that was breached, Plaintiff cannot establish negligence. This results in no material facts being in dispute and therefore Defendant Sullivan is entitled to judgment as a matter of law.

8

5. Defendant Sullivan's Motion for Summary Judgment is, for the above-stated reasons, granted.

Thereafter, McKim filed a motion for reconsideration or in the alternative a motion for certification pursuant to Arkansas Rule of Civil Procedure 54(b) to seek our appellate review. On May 10, 2017, the circuit court filed an order granting appellant's motion for certification pursuant to Rule 54(b) and directing final judgment as to Sullivan, from which McKim appealed. We dismissed that appeal without prejudice due to a deficient Rule 54(b) certificate, and the case returned to circuit court. *See McKim v. Sullivan*, 2018 Ark. App. 260, 548 S.W.3d 835.

In the meantime, and before our court dismissed McKim's first appeal, the Mitchell defendants filed their separate motion for summary judgment on April 28, 2017. In their motion, they admitted that Sullivan had hired them to extricate a tractor-trailer a couple of days before the accident and attached an invoice from "JIM SMITH'S WRECKER SERVICE." The Mitchell defendants argued, as did Sullivan, that they did not owe either a common law or statutory duty to McKim to prevent gravel or dirt debris from being deposited onto a public roadway or to remove the debris of dirt or gravel from a public roadway. They contended that dirt and gravel are not unnatural substances likely to injure any person as prescribed in Arkansas Code Annotated section 27-51-1405(a), and they contended that dirt and gravel are not destructive or dangerous materials as prescribed in subsection (b). As such, the Mitchell defendants contended they were entitled to a judgment as a matter of law.

McKim filed a response denying that the Mitchell defendants were entitled to a judgment as a matter of law. In addition to arguing that subsections (a) and (b) of Arkansas

9

Code Annotated section 27-51-1405 imposed a statutory duty on the Mitchell defendants, McKim argued that the Mitchell defendants had a statutory duty under subsection (c). Subsection (c) of Arkansas Code Annotated section 27-51-1405 is directed at any person removing a wreck or damaged vehicle and provides as follows:

> (c) Any person removing a wrecked or damaged vehicle from a public highway, as defined by § 27-51-101, shall remove any glass or other injurious substance dropped upon the public highway from the vehicle.

Moreover, McKim argued that Arkansas Code Annotated section 27-51-1405(a)−(c) is not limited to *unnatural* substances. Instead, McKim alleged that the inquiry under *Bowie v. Missouri Pacific Railroad Co.*, 262 Ark. 793, 561 S.W.2d 314 (1978), is merely whether the substance in question is "likely to injure" under subsection (a), or "destructive or injurious" under subsection (b), or "injurious" under subsection (c). McKim contended the gravel and dirt in question here was "likely to injure" and "destructive and injurious."

The Mitchell defendants filed a reply reiterating that Arkansas Code Annotated section 27-51-1405(a)−(c) is inapplicable to the facts as alleged in this case because the statute applies only to *unnatural* materials. They further alleged that they were entitled to summary judgment because the gravel was not the proximate cause of McKim's injuries.

On August 3, 2017, while the Sullivan order granting summary judgment was pending on appeal to this court under a Rule 54(b) certificate, the circuit court filed an order granting the Mitchell defendants' motion for summary judgment and dismissing the Mitchell defendants with prejudice.[4] This timely appeal followed, wherein McKim appeals

---

[4]A subsequent order granting a stay of entry of judgment specifically noted that the Mitchell defendants' motion for summary judgment was granted for the same reasons as the

10

from the order granting summary judgment to Sullivan and the order granting summary judgment to the Mitchell defendants.[5]

### III. *The Appeal - Summary Judgment Standard of Review*

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and that the moving party is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee, supra.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

To prove negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause

---

order granting Sullivan's motion for summary judgment. The circuit court lifted the stay after our mandate dismissing McKim's first appeal was issued.

[5]On August 13, 2018, the circuit court filed an order granting McKim's amended motion to voluntarily nonsuit the Jim Smith defendants, thereby creating a final, appealable judgment.

11

of the plaintiff's injuries. *Duran v. SW Ark. Elec. Coop. Corp.*, 2018 Ark. 33, 537 S.W.3d 722. Duty arises out of the recognition that the relation between individuals may impose upon one a legal obligation for the benefit of another. *Id.* Whether a duty is owed to a plaintiff alleging negligence is always a question of law and not one for the jury, and if the circuit court finds that no duty of care is owed, summary judgment is appropriate. *Kowalski v. Rose Drugs of Dardanelle*, 2011 Ark. 44, 378 S.W.3d 109.

## IV. *Discussion*

On appeal, McKim contends that Arkansas Code Annotated section 27-51-1405 imposed a statutory duty on Sullivan and the Mitchell defendants.[6] McKim argues that the circuit court erred in granting summary judgment because the circuit court incorrectly ruled that section 27-51-1405 does not apply to natural substances such as dirt, gravel, and rocks. More specifically, McKim argues that (1) the circuit court erred in ruling that Arkansas law regarding the deposit of hazardous substances on the roadway, specifically Arkansas Code Annotated section 27-51-1405(a), does not apply to hazardous accumulations of natural substances such as dirt, gravel, and rocks; (2) the circuit court erred in ruling that Arkansas law requiring the removal of hazardous substances deposited on the highway, specifically Arkansas Code Annotated section 27-51-1405(b), does not apply to hazardous accumulations of natural substances such as dirt, gravel, and rocks; and (3) the circuit court erred in granting summary-judgment dismissal to the Mitchell defendants who had a duty to remove the hazard pursuant to Arkansas Code Annotated section 27-51-1405(c). In

---

[6]McKim abandons on appeal his argument that Sullivan and the Mitchell defendants owed him a duty under common law. Therefore, we do not make any holdings or inferences as to the appropriateness of the circuit court's ruling on this issue.

other words, McKim contends that the circuit court narrowly interpreted the statute to apply only to *unnatural* substances and therefore erred in ruling that the statute did not impose a duty on Sullivan and the Mitchell defendants.

This court's rules regarding statutory construction are clear and well established. We review issues of statutory interpretation de novo and are not bound by the circuit court's determination. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179. However, we will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *Cockrell v. Union Planters Bank*, 359 Ark. 8, 194 S.W.3d 178 (2004). The basic rule of statutory construction is to give effect to the intent of the legislature. *Calaway v. Practice Mgmt. Servs., Inc.*, 2010 Ark. 432. When the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Brown v. State*, 375 Ark. 499, 292 S.W.3d 288 (2009). However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Brock, supra.* It is axiomatic that this court strives to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Sw. Power Pool, Inc. v. Kanis & Denny Roads Suburban Water Improvement Dist. No. 349 of Pulaski Cty.*, 2016 Ark. 135, 489 S.W.3d 140.

Arkansas Code Annotated section 27-51-1405 provides as follows:

(a) No person shall throw or deposit upon any highway any glass bottle, glass, nails, tacks, wire, cans, or *any other substance likely to injure* any person, animal, or vehicle upon the highway.

(b) Any person who drops or permits to be dropped or thrown upon any highway *any destructive or injurious material* shall immediately remove it or cause it to be removed.

(c) Any person removing a wrecked or damaged vehicle from a public highway, as defined by § 27-51-101, shall remove any glass or *other injurious substance* dropped upon the public highway from the vehicle.

(Emphasis added.)

Sullivan and the Mitchell defendants contend that we should apply the following two legal doctrines in interpreting this statute: *ejusdem generis* and *noscitur a sociis*. Pursuant to the doctrine of *ejusdem generis*, when general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Hanley v. Ark. State Claims Comm'n*, 333 Ark. 159, 167, 970 S.W.2d 198, 201 (1998). This doctrine applies when (1) the statute contains an enumeration of specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration usually follows it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires. *McKinney v. Robbins*, 319 Ark. 596, 892 S.W.2d 502 (1995). Similarly, the doctrine of *noscitur a sociis*, which literally translates to "it is known from its associates," provides that a word can be defined by the accompanying words. *Hanley, supra.* Sullivan and the Mitchell defendants argue that both doctrines are applicable here. First, they argue that because

subsection (a) of the statute enumerates "glass bottle, glass, nails, tacks, wire, [and] cans," we must conclude that subsection (a) would not include *natural* substances after applying the doctrine of *ejusdem generis*. Further, they argue that by applying the doctrine of *noscitur a sociis* in the context of the statute as a whole, we should conclude that all three subsections of the statute would not include dirt and gravel.

McKim counters that these interpretative doctrines do not apply when the language of the statute is clear, as is the case here. McKim explains that the fifth condition, as set out in *McKinney,* is not met because the clear manifested intent of the statute is to give the general term a broader meaning than the doctrines would require. McKim contends that if the legislature had intended to limit the interpretation of the statute as Sullivan and the Mitchell defendants urge us to do, then the legislature could have done so by listing the prohibited items as "glass bottle, glass, nails, tacks, wire, cans, or any *similar* substance." Instead, McKim argues that the statute clearly manifests an intent that the broader term "or any *other* substance likely to injure" in subsection (a) should include *any* substance that is hazardous or injurious—whether it is natural or unnatural. In essence, McKim argues that the legislature's use of the accompanying phrase "other substances" is broader than the narrower phrase it could have used—"other *similar* substances." Therefore, McKim argues that Sullivan and the Mitchell defendants' interpretation is overly restrictive.

We agree with McKim on this point. Our supreme court has cautioned that "canons of statutory construction such as *noscitur a sociis* are only aids to judicial interpretation, and they will not be applied where there is no ambiguity, *to defeat legislative intent and purpose*, to make general words meaningless, or to reach a conclusion inconsistent with other rules of

15

construction." *Seiz Co. v. Ark. State Highway & Transp. Dep't*, 2009 Ark. 361, at 8, 324 S.W.3d 336, 342 (emphasis in original).  Based on the plain language of the statute, we agree that nothing in the statute limits the substances and materials referenced therein to *unnatural* ones.  Instead, subsection (a) of the statute prohibits one from depositing "*any other substance likely to injure any person, animal, or vehicle upon the highway.*" (Emphasis added.)  If the legislature intended to limit the type of substance to unnatural ones, it certainly could have done so.  Additionally, subsection (b) of the statute imposes a duty on one to immediately remove or cause the removal of "*any destructive or injurious material*" that he or she "drops or permits to be dropped or thrown upon any highway." (Emphasis added.)  There is nothing in this subsection that would suggest that the material must be unnatural.  The focus is instead on whether the material is "destructive or injurious."  Finally, subsection (c) imposes a duty on one "removing a wrecked or damaged vehicle from a public highway" to also remove "*any* glass or *other injurious substance* dropped upon the public highway from the vehicle."  (Emphasis added.)  Again, there is nothing in this subsection that requires the material to be unnatural; instead, the focus is on whether the material is an "injurious substance."  To hold otherwise would defeat the clear legislative intent and purpose of the statute.

We agree with McKim's arguments that the statute cannot be read to allow a person to throw or deposit substantial amounts of dirt, gravel, timber, or hay on the road without possible consequences simply because those substances are natural rather than unnatural.  Instead, the correct inquiry under the statute is not whether the substances are natural or unnatural; rather, it is whether the material or substance on the public highway at issue is a

16

"substance likely to injure," is "destructive or injurious material," or an "injurious substance."

Finally, Sullivan and the Mitchell defendants' reliance on *Bowie*, 262 Ark. 793, 561 S.W.2d 314, as support for the position that section 27-51-1405 applies only to unnatural substances is misplaced. Bowie slipped on a substance when he was walking on the south side of a pedestrian railroad crossing. *Id.* He described the substance as a byproduct of soybean meal that looked as though it came from a railroad car that had leaked on the track and the crossing. *Id.* After hearing the evidence at trial, the circuit court entered a directed verdict in favor of the railroad. *Id.* Our supreme court affirmed and stated as follows:

> Ark. Stat. Ann. § 75-657 (Repl. 1957) [now section 27-51-1405], affords no relief to appellant because there is no showing that the substance was "any glass bottle, glass, nails, tacks, wire, cans, or any other substance likely to injure any person, animal, or vehicle upon such highway." Neither was there a showing that the substance was "destructive or injurious material" which any person would be required to remove.

*Bowie*, 262 Ark. at 796, 561 S.W.2d at 316.

*Bowie* does not stand for the proposition that the statute applies only to unnatural substances. Instead, in interpreting the statute, our supreme court held that Bowie failed to show that the soybean-meal substance fit the definition of the statute because it was not a "substance likely to injure" or "destructive or injurious material."

We agree with McKim that the circuit court erred in restricting the interpretation of the phrases "substance likely to injure," "destructive or injurious material," and "injurious substance" to only unnatural substances or materials. If the legislature intended to restrict these phrases to only unnatural substances or materials, it could have done so. Therefore, we reverse the orders granting summary judgment to Sullivan and the Mitchell defendants

17

and remand this case to the circuit court for further proceedings consistent with this opinion. Because we hold that the circuit court erred in its narrow interpretation of the statute, we do not make any holdings or inferences as to whether a duty exits under the facts of this case or whether Sullivan or the Mitchell defendants have breached any such duty.

Reversed and remanded.

ABRAMSON and VIRDEN, JJ., agree.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Michael McCarty Harrison* and *Kimberly D. Young*; and *Barber Law Firm* PLLC, by: *J. Carter Fairley*, for separate appellee Jack Sullivan.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Stuart P. Miller* and *David F. Koehler*, for separate appellees Mitchell Collision and Towing Center, Inc., and Sam Mitchell.